# IN THE SUPREME COURT OF IOWA

No. 15–0308

Filed April 7, 2017

**STATE OF IOWA,**

Appellee,

vs.

**ANDRE LETROY ANTWAN HARRINGTON,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

Appellant seeks further review of a court of appeals decision affirming the district court's imposition of sentence under an enhancement for repeat offenders. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED IN PART AND CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick and Kevin R. Cmelik, Assistant Attorneys General, Michael J. Walton, County Attorney, Amy DeVine, Assistant County Attorney, for appellee.

**CADY, Chief Justice.**

In this case, we consider the procedural protections available to a defendant when the State seeks a sentencing enhancement under Iowa's habitual offender statute. The district court in this case did not inform the defendant of certain constitutional and statutory rights associated with accepting pleas of guilt before accepting his admission to the prior convictions to support the habitual offender status. The court of appeals found the defendant failed to preserve error by filing a motion in arrest of judgment based on his claims of deficiencies in the proceedings. It also concluded the district court did not abuse its discretion in refusing to permit the admission to be withdrawn. Finally, the court of appeals found that even if there were error, no prejudice resulted. On further review, we vacate the decision of the court of appeals, reverse the district court, and remand the case for a trial on the defendant's habitual offender status.

## I. Factual Background and Proceedings.

Andre Letroy Antwan Harrington was arrested and charged with the crime of robbery in the second degree. *See* Iowa Code § 711.1 (2013) ("A person commits a robbery when, having the intent to commit a theft, the person. . . [c]ommits an assault upon another."); *id.* § 711.3 ("All robbery which is not robbery in the first degree is robbery in the second degree. Robbery in the second degree is a class "C" felony.").[1] The State also sought a "habitual offender" sentencing enhancement based on his prior record. *See id.* § 902.8 (2013) ("An habitual offender is any person

---

[1]At the time, the legislature did not provide for robbery in the third degree. *See* 2016 Iowa Acts ch. 1104, § 4 (codified at Iowa Code § 711.3A(1)–(2) (2017)) (providing for aggravated misdemeanor robbery if the person perpetrating the robbery commits simple misdemeanor assault).

convicted of a class "C" or a class "D" felony, who has twice before been convicted of any felony in a court of this or any other state, or of the United States."). Under the habitual offender statute, instead of a ten-year sentence, Harrington faced a fifteen-year sentence. *See id.* §§ 902.8, .9(3)–(4).

The minutes of testimony revealed the State planned to call designees of the Scott County jail and Jasper County clerk of court to testify Harrington was convicted of the crime of going armed with intent in 2000 and the crime of possession of a controlled substance with intent to deliver in 2009. The State also attached a report from the National Crime Information Center identifying the two prior felony convictions.

The case proceeded to a jury trial on the charge of robbery in the second degree. Harrington testified in his defense, and evidence of his prior felony convictions was admitted during his testimony. The jury returned a verdict of guilty. The district court proceeded to consider the habitual offender sentencing enhancement.

Outside the presence of the jury, the district court asked Harrington if he wanted to stipulate to the two prior felony convictions in support of the habitual offender enhancement or if he wanted the issue decided by the jury. Harrington acknowledged the two prior felony convictions, but expressed his desire for the matter to be decided by the jury. After a spirited colloquy, the district court accepted Harrington's admission to the prior felonies and concluded no jury determination was needed because Harrington admitted to the prior convictions. During the colloquy, Harrington was informed that his admission meant he was no longer entitled to a trial.

The district court subsequently sentenced Harrington for the crime of robbery in the second degree as a habitual offender. He was sentenced to fifteen years in prison, with a mandatory minimum period of incarceration of seventy percent before eligibility for parole.

Harrington appealed. He claimed the courtroom habitual offender colloquy was deficient for two reasons. First, he claimed the colloquy failed to show his admission to the prior offenses was made voluntarily and intelligently. Second, he asserted the colloquy failed to identify evidence to show he was represented by counsel or waived counsel in the cases involving the prior convictions. Harrington also claimed the district court should have construed his request during the colloquy for a trial as a request to withdraw his admission, and it abused its discretion in refusing the request.

We transferred the case to the court of appeals. The court of appeals affirmed the judgment and sentence of the district court. It found Harrington failed to preserve error concerning deficiencies in the habitual offender colloquy by failing to file a motion in arrest of judgment following the habitual offender hearing and by also failing to object to the deficiencies at the time of the colloquy. The court of appeals also concluded the district court did not abuse its discretion by failing to allow Harrington to withdraw his admission to the prior felony convictions after he expressed his desire for the jury to decide the matter. We granted further review.

## II. Standard of Review.

"Claims involving the interpretation of a statute or rule are usually reviewed for errors at law." *State v. Kukowski,* 704 N.W.2d 687, 690–91 (Iowa 2005); *see also* Iowa R. App. P. 6.907. However, to the extent our

review extends beyond the habitual offender statute and into claims having a constitutional basis, our review is de novo. *See Kukowski*, 704 N.W.2d at 690.

### III. Preservation of Error.

We first consider whether Harrington has preserved error for appeal on his claims of deficiency in the habitual offender colloquy. He failed to assert an objection to any deficiencies during the habitual offender colloquy and did not file a motion in arrest of judgment prior to sentencing.

A motion in arrest of judgment is an application by a defendant in a criminal case that no judgment should be entered "on a finding, plea, or verdict of guilty." Iowa R. Crim. P. 2.24(3)(*a*). The rule serves as a vehicle to bring a variety of claims before the court. *See State v. Oldfather*, 306 N.W.2d 760, 762 (Iowa 1981). The motion is granted when the whole record shows no legal judgment can be pronounced. Iowa R. Crim. P. 2.24(3)(*a*). One type of claim identified by the rule that must be raised in the motion is a challenge to the adequacy of a guilty plea proceeding. *Id.* It is a claim that no judgment should be entered on a "plea . . . of guilt[]" because deficiencies in the proceedings rendered the plea involuntary. *Id.* The rule states, "A defendant's failure to challenge the adequacy of the guilty plea proceeding by a motion in arrest of judgment shall preclude the defendant's right to assert such a challenge on appeal." *Id.* Thus, the motion is both a procedural mechanism to raise claims of error and an error preservation requirement. The question is whether both components of the motion are applicable to claims of error in habitual offender admission proceedings.

We have repeatedly said that an admission by an offender to the prior convictions to support sentencing as a habitual offender is comparable to a plea of guilty to support sentencing for the crime identified in the plea. *Kukowski*, 704 N.W.2d at 692; *State v. Brady*, 442 N.W.2d 57, 58 (Iowa 1989). An admission is comparable to a guilty plea because both acknowledge facts that render the person amenable to punishment by law. Additionally, the rights at stake in a habitual offender proceeding are significant and "are often of the same magnitude as in the case of a plea of guilty." *In re Yurko*, 519 P.2d 561, 565 (Cal. 1974). If a defendant waives the right to a trial on the prior convictions, he or she waives all the constitutional protections associated with the trial, relieves the state of its burden of proof, and forecloses the opportunity to appeal trial errors. *See Wright v. Craven*, 325 F. Supp. 1253, 1257 (N.D. Cal. 1971) ("The defendant who admits the priors charged against him will be deemed to have waived nearly all rights later to question their validity. But the harshness of this result is mitigated by one, fragile principle: waiver must be a 'knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.'" (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970))). For these reasons, many other jurisdictions also compare habitual offender admissions to guilty pleas. *See, e.g.*, *People v. Cross*, 347 P.3d 1130, 1135 (Cal. 2015) ("The same constitutional standards of voluntariness and intelligence apply when a defendant forgoes a trial on a prior conviction allegation."); *State v. Cheatham*, 80 P.3d 349, 353–54 (Idaho Ct. App. 2003) (compiling cases from "[s]everal federal courts of appeal [that] have held . . . where the law of the prosecuting jurisdiction affords a defendant the right to a trial on

recidivist allegations, a trial court may not dispense with such a trial without taking steps to ensure that the defendant himself is knowingly and voluntarily admitting the prior convictions with an understanding that he will thereby be subject to enhanced penalties," and adopting the same rule (footnote omitted) (citation omitted)). Consistent with *Kukowski* and *Brady*, we conclude that a motion in arrest of judgment is a proper vehicle to bring claims of deficiencies in a habitual offender proceeding. Like claims of deficiencies in guilty plea proceedings, claims in deficiencies in habitual offender proceedings are assertions that no judgment and sentence can be pronounced. The remaining question is whether the motion is also a requirement to preserve error for appellate review of the claims of deficiencies.

It is not necessary for us to decide if a habitual offender admission proceeding constitutes a "guilty plea proceeding" within the error-preservation language of Iowa Rule of Criminal Procedure 2.24(3). Error preservation is a fundamental principle of law with roots that extend to the basic constitutional function of appellate courts. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002); Thomas A. Mayes & Anurahda Vaitheswaran*, Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 43–45 (2006) [hereinafter Mayes]. The doctrine has been developed over time by both court rules and court decisions. Its purpose is to allow the district court to correct error without the necessity of an appeal. *See State v. Whorley*, 297 N.W.2d 368, 370 (Iowa 1980). It also serves to create a record for appellate review. *See DeVoss v. State*, 648 N.W.2d 58, 60 (Iowa 2002). *See generally* Mayes, 55 Drake L. Rev. at 48–50.

We have applied the error preservation rule to a variety of motions in the past. *See DeVoss*, 648 N.W.2d at 61. Having determined that claims of deficiencies in a habitual offender proceeding are properly raised by filing a motion in arrest of judgment, there is no reason not to also apply the error preservation requirement. The purposes of the error preservation rule would be served, just as they are by imposing the requirement to preserve error for deficiencies in a guilty plea proceeding. The error preservation requirement would lead to an orderly and prompt process to dispose of claims of procedural error, just as for guilty-plea claims. Accordingly, we hold that offenders in a habitual offender proceeding must preserve error in any deficiencies in the proceeding by filing a motion in arrest of judgment.

Notwithstanding, we only apply this rule of law prospectively. We therefore excuse Harrington's failure to preserve error by filing a motion in arrest of judgment.

## IV. Habitual Offender Colloquy.

We next consider the claims of deficiency in the habitual offender colloquy. At the outset, we reject the claim by Harrington that the district court abused its discretion in failing to allow him to withdraw his admission to the prior convictions after he expressed his desire for a hearing. The record fails to reveal Harrington requested to withdraw his admission after the district court informed him that his admission obviated the need for a hearing. Thus, because no request to withdraw was made, we also do not address the State's claim that no prejudice resulted from any abuse of discretion.[2] We turn, therefore, to consider

---

[2]We observe that prejudice is part of an abuse-of-discretion claim. *See Kukowski*, 704 N.W.2d at 693–94 (stating error based on an abuse of discretion results in reversal only when the abuse is prejudicial). The question on appeal is not whether Harrington suffered no prejudice because evidence existed to establish the prior

the claim by Harrington that the district court failed to engage in a colloquy in the habitual offender proceeding to determine if the admission to the prior convictions was made voluntarily and intelligently.

**A. Background.** "[R]ecidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Almendarez-Torres v. United States*, 523 U.S. 224, 243, 118 S. Ct. 1219, 1230 (1998). In Iowa, the habitual offender process is governed by statute. After two or more prior convictions of class "D" or "C" felonies, the offender convicted of a subsequent felony is deemed a habitual offender and subjected to a fifteen-year sentence with a mandatory minimum period of incarceration of three years. *See* Iowa Code §§ 902.8, .9(3).

While recidivist statutes have deep roots in our law, the procedural protections observed today grew with time. Under early versions of the Code, the state charged present and prior offenses in one indictment, a single trial was held, and the jury entered a special verdict on the prior offenses. *See* Iowa Code §§ 4871-a, -d (Supp. 1902). But this singular procedure immediately informed the jury of the defendant's prior criminal record, even though such evidence would ordinarily be inadmissible. *See State v. Fisk*, 248 Iowa 970, 973, 83 N.W.2d 581, 582 (1957) ("It may be that such proof tends to convince the jury that the defendant is not an upright citizen, and so makes his conviction on the primary charge more likely."). The defendant could only avoid this result by admitting the prior convictions ahead of trial. *See State v. Griff*, 257

_____

convictions, but whether Harrington knowingly and voluntarily admitted the prior convictions. *See State v. Finney*, 834 N.W.2d 46, 61 (Iowa 2013); *see also Kukowski*, 704 N.W.2d at 692 (noting the court must "ensure that the affirmation is voluntary and intelligent").

Iowa 852, 854, 135 N.W.2d 77, 78 (1965) ("[W]here the defendant admits the prior convictions it is not proper or necessary to instruct thereon . . . .").

In 1965, the legislature addressed the problem by adopting a two-stage trial procedure. *See generally* 1965 Iowa Acts ch. 444. Under the two-stage procedure, the state files two informations, one that omits any reference to previous convictions. *See* Iowa R. Crim. P. 2.6(5). The jury is only read the information charging the present offense, and the trial is confined to that offense. If this trial results in a guilty verdict, the court then gives the offender an opportunity to affirm or deny the prior convictions. *See id.* r. 2.19(9). If the offender denies he or she was the person identified in the prior convictions, there is a second trial by jury "on the issue of the offender's identity with the person previously convicted." *Id.*

By 2002, the procedure was amended to reflect our caselaw giving the offender the opportunity to affirm or deny not only identity, but "that the offender was not represented by counsel and did not waive counsel" in the prior convictions. *Id.* The offender is given this opportunity because

> [t]o permit a conviction obtained in violation of *Gideon v. Wainwright*[, 372 U.S. 335, 83 S. Ct. 792 (1963),] to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case.

*State v. Cameron*, 167 N.W.2d 689, 694 (Iowa 1969) (citation omitted) (quoting *Burgett v. Texas*, 389 U.S. 109, 115, 88 S. Ct. 258, 262 (1967)). Aside from this change and various renumbering, the rules have remained largely unchanged since 1965. *See* Iowa Rs. Crim. P. 2.6(5), .19(9) (2017). The constant feature of these rules has been that the

defendant is entitled to a second trial on the prior convictions. *See* Iowa Code § 785.16 (1966); Iowa R. Crim. P. 2.19(9). The State bears the burden to establish the prior convictions beyond a reasonable doubt. *See State v. Long*, 814 N.W.2d 572, 576 (Iowa 2012); *see also State v. Smith*, 129 Iowa 709, 709, 106 N.W. 187, 189 (1908) ("Every fact essential to the infliction of legal punishment upon a human being must be proven beyond a reasonable doubt."). The current rule reads,

> *Trial of questions involving prior convictions.* After conviction of the primary or current offense, but prior to pronouncement of sentence, if the indictment or information alleges one or more prior convictions which by the Code subjects the offender to an increased sentence, the offender shall have the opportunity in open court to affirm or deny that the offender is the person previously convicted, or that the offender was not represented by counsel and did not waive counsel. If the offender denies being the person previously convicted, sentence shall be postponed for such time as to permit a trial before a jury on the issue of the offender's identity with the person previously convicted. Other objections shall be heard and determined by the court, and these other objections shall be asserted prior to trial of the substantive offense in the manner presented in rule 2.11. On the issue of identity, the court may in its discretion reconvene the jury which heard the current offense or dismiss that jury and submit the issue to another jury to be later impaneled. If the offender is found by the jury to be the person previously convicted, or if the offender acknowledged being such person, the offender shall be sentenced as prescribed in the Code.

Iowa R. Crim. P. 2.19(9).

**B. The Colloquy.** We have said that "[a]n affirmative response by the defendant under the rule . . . does not necessarily serve as an admission to support the imposition of an enhanced penalty as a multiple offender." *Kukowski*, 704 N.W.2d at 692. Instead, "[t]he court has a duty to conduct a further inquiry, similar to the colloquy required under rule 2.8(2), prior to sentencing to ensure that the affirmation is

voluntary and intelligent." *Id.* Today, we take the opportunity to define the scope of this inquiry further.

In *Brady*, we found "a defendant's admission of prior felony convictions which provide the predicate for sentencing as an habitual offender [was] so closely analogous to a plea of guilty that it is appropriate to refer to our rules governing guilty pleas," at least to decide the issue in that case. 442 N.W.2d at 58. In *State v. Oetken*, we found "[t]he trial court discharged its duty to inform the defendant as to the ramifications of an habitual offender adjudication," when the defendant was "fully cognizant of his rights, including those delineated under [now-]rule [2.19(9)]," and "the possible implications with regard to the sentencing of an habitual offender were discussed at length." 613 N.W.2d 679, 688 (Iowa 2000). In *Kukowski*, we noted the court must ensure "the affirmation is voluntary and intelligent." 704 N.W.2d at 692.

Overall, our precedent reveals a broad, dual command in accepting an admission or stipulation to the prior convictions: courts must ensure that the admission is "voluntary and intelligent," *id.*, and that the defendant understands "the ramifications of an habitual offender adjudication," *Oetken*, 613 N.W.2d at 688. Because our guilty plea rules embrace these constitutional requirements, *see State v. Loye*, 670 N.W.2d 141, 150–51 (Iowa 2003), "it is appropriate to refer to our rules governing guilty pleas" to give this command substance, *Brady*, 442 N.W.2d at 58. Thus, we rely on those rules to now identify the specific areas that must be a part of a habitual offender colloquy to support an admission. *See* Iowa R. Crim. P. 2.8(2)(*b*).

Courts may not accept a guilty plea without first determining it is made voluntarily and intelligently and has a factual basis. *Id.* This

standard directs the court to provide information to the defendant and to determine the information is understood. *Id.* The information and understanding pertains to the nature of the charge, the mandatory minimum or maximum punishment, the impact of federal immigration laws, the rights associated with the trial, and the waiver of the right to trial by pleading guilty. *Id.* The court must also inquire into any promises or agreements that are a part of the plea and inform the defendant that any challenge to the plea must be raised in a motion in arrest of judgment. *Id.*

Generally, the voluntary-and-intelligent standard for admitting to prior convictions in a habitual offender proceeding should follow the same protocol. First, the court must inform the offender of the nature of the habitual offender charge and, if admitted, that it will result in sentencing as a habitual offender for having "twice before been convicted of a felony." *See* Iowa Code § 902.8 (2017). The court must inform the offender that these prior felony convictions are only valid if obtained when the offender was represented by counsel or knowingly and voluntarily waived the right to counsel. *See* Iowa R. Crim. P. 2.19(9). As a part of this process, the court must also make sure a factual basis exists to support the admission to the prior convictions. *See* Iowa R. Crim. P. 2.8(2)(*b*).

Second, the court must inform the offender of the maximum possible punishment of the habitual offender enhancement, including mandatory minimum punishment. *Id.* In the typical case, the court must ensure the offender understands he or she will be sentenced to a maximum sentence of fifteen years and that he or she must serve three years of the sentence before being eligible for parole. *See* Iowa Code

§§ 902.8, .9(1)(*c*). If the offender faces a greater mandatory minimum punishment or maximum possible punishment due to the present offense charged, the court must inform the offender of the specific sentence he or she will face by admitting the prior offenses. *See In re Yurko*, 519 P.2d at 565 (noting an offender must be informed "of the precise increase in the term or terms which might be imposed"); *State v. Ross*, 729 N.W.2d 806, 812 (Iowa 2007) ("[T]he mandatory minimum sentences prescribed in section 902.12 apply to habitual offenders.").

Third, the court must inform the offender of the trial rights enumerated in Iowa Rule of Criminal Procedure 2.8(2)(*b*)(4). For the reasons discussed below, the right to a jury in the second trial only pertains to the issue of identity. Any claim by the offender that he or she was not represented by counsel and did not waive counsel in the prior convictions is heard and decided by the district court. Although the offender has no right to a jury trial on these issues, the other rights associated with a trial are applicable at the hearing before the court.

Fourth, the court must inform the offender that no trial will take place by admitting to the prior convictions. The court must also inform the offender that the State is not required to prove the prior convictions were entered with counsel if the offender does not first raise the claim.

Finally, we reiterate that the district court must inform the offender that challenges to an admission based on defects in the habitual offender proceedings must be raised in a motion in arrest of judgment. The district court must further instruct that the failure to do so will preclude the right to assert them on appeal. *See* Iowa R. Crim. P. 2.8(2)(*d*).

We find no constitutional necessity for the district court to inform the offender of the effect of the admission on the offender's status under federal immigration law as required in a guilty plea proceeding. *Cf.* Iowa R. Crim. P. 2.8(2)(*b*)(3). Habitual offender status is not an offense, but a sentencing enhancement. *State v. Woody*, 613 N.W.2d 215, 217 (Iowa 2000). Generally, immigration consequences result from conviction of the primary offense, not the length of the sentence. *See generally* 8 U.S.C. § 1227(a)(2)(A)–(F) (2012) (identifying "deportable aliens" based on criminal conviction). In certain circumstances, immigration consequences may follow criminal convictions only if the length of the sentence is at least one year. *See, e.g.*, 8 U.S.C. § 1101(a)(43)(F), (G), (J), (P), (R) (defining aggravated felonies based on conviction of certain offenses when accompanied by sentence of at least one year); *id.* § 1227(a)(2)(A)(i)(II) (requiring removal if sentence of one year accompanies conviction of crime of moral turpitude). Yet the offender at the habitual offender stage of trial has already been convicted in the first stage of trial of an offense with a sentence of incarceration greater than one year. *See* Iowa Code § 902.9(1)(*a*)–(*e*). Thus, any immigration consequences would inevitably result from the primary offense, not the sentencing enhancement. Therefore, an advisement from the court on this point would be unnecessary in the habitual offender context.

In this case, the colloquy engaged in by the court failed to satisfy the requirements we now establish for an offender to affirm or admit the allegations the state is obligated to prove at the habitual offender proceeding. First, the district court failed to advise Harrington that the prior convictions needed to have been obtained when he was represented by, or waived the right to, counsel. Second, the court failed to advise

Harrington during the colloquy that the habitual offender enhancement would subject him to a seventy percent mandatory minimum on a fifteen-year sentence. *See* Iowa Code §§ 902.9(1)(*c*), .12 (2013); *State v. Ross*, 729 N.W.2d 806, 812 (Iowa 2007) ("[T]he mandatory minimum sentences prescribed in section 902.12 apply to habitual offenders."). Second, the court did not fully advise Harrington of the right to a trial by jury, the right to the assistance of counsel, the right to confront and cross-examine witnesses, or the right against self-incrimination. *See Kukowski*, 704 N.W.2d at 693 (declining to interpret rule 2.19(9) "in a manner that could interfere" with a constitutional right). Third, the court failed to fully advise Harrington that a trial would not be held by admitting to the prior convictions. Collectively, these failures leave us unable to conclude Harrington's admission was knowingly and voluntarily made.

**C. The Second Trial.** We have never fully explained the process of this second trial to determine the habitual offender status. We do so at this time to give context to the required colloquy.

Rule 2.19(9) provides that offenders must be given an "opportunity in open court to affirm or deny that the offender is the person previously convicted, or that the offender was not represented by counsel and did not waive counsel." Iowa R. Crim. P. 2.19(9). This initial step in the proceeding is akin to an arraignment and plea. *See id.* r. 2.8(b). It alerts the court to the course of proceedings to follow. Three paths may be taken.

If the offender affirms that he or she is the person identified in the prior conviction records and does not object on the basis that he or she was not represented by counsel and did not waive counsel, the court

must engage in the colloquy to ensure the affirmation is voluntary and intelligent, including an understanding of the rights associated with the trial. If the offender denies being the person previously convicted, the case proceeds to trial on the issue of the offender's identity with the person previously convicted. The second trial, therefore, only decides the issue of identity, and the court decides "[o]ther objections" prior to that trial "in the manner presented in rule 2.11." *Id.* r. 2.19(9). The "[o]ther objections" would include any objection that the prior convictions cannot be used because the offender was not represented by counsel and did not waive counsel. *Id.* Thus, if the offender admits he or she is the person identified in the prior conviction records, but claims he or she was not represented by counsel and did not waive counsel, then the assistance-of-counsel issue is presented to the district court to resolve without a jury.

This procedure is compatible with the burden-shifting approach we adopted in *Cameron*, 167 N.W.2d at 694. In *Cameron*, we recognized the state must establish the prior convictions were obtained in compliance with *Gideon*, 372 U.S. at 344, 83 S. Ct. at 796. *Id.* Normally, the records of the prior convictions supply the evidence needed for the court to decide if the *Gideon* standard was met. But, "where the record is silent as to whether an accused was furnished counsel at a critical stage," the accused must first "introduce[] evidence tending to show that he was not in fact so represented," and only then does the burden "shift[] to the state to prove, by a fair preponderance of the evidence, that the accused was represented." *Id.* (quoting *Losieau v. Sigler*, 406 F.2d 795, 803 (8th Cir. 1969)); *see also Parke v. Raley*, 506 U.S. 20, 31, 113 S. Ct. 517, 524 (1992). Thus, if the prior conviction records state the defendant was not represented by counsel and did not waive counsel, the State has the

burden to prove the offender was in fact represented by counsel or waived counsel. If the records do not disclose if the defendant was represented by counsel or waived counsel, or show the defendant was represented or waived counsel, then the offender has the burden to introduce some evidence to support the claim. The burden then shifts to the State to show the offender was represented by counsel or representation was waived. If the State fails to meet its burden of proof, the prior convictions cannot be used to support the habitual offender status.

## V. Conclusion.

The procedural requirements imposed by this ruling today have constitutional underpinnings, but they will also promote general fairness in our trial process, help eliminate appeals by giving trial courts an opportunity to correct error, and give greater understanding to offenders faced with habitual offender claims.

We conclude Harrington did not knowingly and voluntarily admit his prior convictions because he was not informed of his constitutional rights and the consequences of his admission. We vacate the decision of the court of appeals, reverse the judgment and sentence of the district court, and remand the case to the district court for further proceedings consistent with this opinion or, if Harrington denies the prior convictions or their validity, for trial on whether he meets the requirements of a habitual offender as defined in Iowa Code section 902.8. We affirm the uncontested judgment of guilt on the present offense, second-degree robbery.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED IN PART AND CASE REMANDED.**

All justices concur except Mansfield and Waterman, JJ., who dissent.

**MANSFIELD, Justice (dissenting).**

Although the court's opinion offers a reasonable way to approach the habitual offender enhancement colloquy *in the future*, it differs from the approach required by our current rules and precedent. In addition, the facts of this particular case do not warrant relief. Therefore, I would affirm Harrington's conviction under the enhancement. Any changes should occur through amendments to Iowa Rule of Criminal Procedure 2.19(9), with public notice and opportunity for comment.

Two points about the record should be noted. First, Harrington was informed at the beginning of trial of the consequences of the enhancement. A record was made then of the State's plea offer: i.e., a guilty plea to first-degree theft without an enhancement. The district court thoroughly explained, and Harrington well understood, that if convicted of second-degree robbery with the enhancement he would receive fifteen years with a 70 percent minimum. As the court told him, "70 percent of 15 years is a long time." Harrington showed familiarity with the workings of the enhancement as he participated in this discussion and turned down the State's proposed deal.

Second, Harrington took the stand at trial and admitted he had two prior felonies, both on direct and on cross-examination. Thus, his prior felony convictions were a matter of record before this case even got to the rule 2.19(9) enhancement phase.

Rule 2.19(9) states that "[i]f the offender denies being the person previously convicted," there shall be a jury trial "on the issue of the offender's identity with the person previously convicted." Iowa R. Crim. P. 2.19(9). In the enhancement phase, Harrington *did not deny* being the person previously convicted. Rather, he said he wanted the jury to

decide whether he was a habitual offender, something that rule 2.19(9) does not provide:

> THE COURT: All right. So you admit those are your two felonies? THE DEFENDANT: Right.
>
> MR. KELLY: You have given up your right to have a hearing? THE DEFENDANT: No. I'm not giving up that right.
>
> THE COURT: Well, if you're admitting those are your two previous felonies -- What is the purpose of bringing the jury back in for that? -- because you're just admitting to them. THE DEFENDANT: Because I want the jury to make a decision whether or not --
>
> THE COURT: You want the jury to make a decision, but you're not denying those are your convictions? This doesn't make any sense. THE DEFENDANT: I would rather have the jury make a decision whether or not they find me an habitual offender.
>
> MS. DEVINE: Because one of the things -- I've only actually proceeded with this one other time, but the Court will ask the defendant in the presence of the jury, "Are you the defendant that was convicted of this?" And he -- I mean, he has to answer yes or no, and then, you would ask him, "Are you the defendant who was convicted of this on" -- and then, he would have to answer yes or no, and then, it becomes a trial if he says no to both of them.
>
> THE COURT: I see what you are saying. Yes, there's no -- Why would we have a trial because he is stipulating those are his two offenses?, is what you are saying, Ms. Devine? Right?
>
> MS. DEVINE: Well, I mean, I guess, just for the record, he would have to either say yes or no to both, and then, we would proceed with the trial.
>
> MR. KELLY: Your Honor, it's been a long time since I've done this. I don't remember that the State can put Mr. Harrington on the stand.
>
> THE COURT: No. She is not saying in front of the jury. She is just saying in terms of -- purposes of whether or not we have to have a trial, which is like it's an OWI III. You say, "Do you have two previous convictions of OWI?", and if the guy says, "Yes," that's it. If he admits those are his two felony convictions, we are not having a trial.
>
> MS. DEVINE: He already admitted under oath he has two previous felony convictions, and under 902.8 and 902.9,

a person who has two felony convictions is an habitual offender.

MR. KELLY: I understand my client has admitted the accuracy of these two convictions.

THE COURT: Then we won't have a trial on it.

MR. KELLY: What I am saying --

THE COURT: It's a waste of time.

MR. KELLY: I don't remember the actual procedure as to whether we can avoid having the --

THE COURT: It's only when he denies these are his convictions. So, Mr. Harrington, do you admit that you were convicted on March 5th, 2009, to the offense of Possession with Intent to Deliver a Schedule I Controlled Substance, in violation 124.401(1)(c) in FECR315494? I've got a certified copy of it. So you admit that's your conviction; yes or no? (A discussion was held off the record with the defendant and his attorney.)

THE COURT: Look. I don't want to play games here, you know. THE DEFENDANT: Yes.

THE COURT: Then, I have a certified copy in the Iowa District Court for Jasper County, FECR006790, where you were -- a certified copy of the Trial Information -- where you entered a plea of guilty to Going Armed with Intent, in violation of Section 708.8 and got a five-year prison sentence, and so, it looks like, on June 12, 2000, in Jasper County, and I think I already read the number, so is that your conviction; yes or no? THE DEFENDANT: Yes.

THE COURT: It says, "Andre Letroy Antwan Harrington." Did you say yes? THE DEFENDANT: Yes. That was my conviction. It was ran concurrent with my time.

THE COURT: All right. Then there's no reason to have the habitual offender trial; right, Ms. Devine? There's no point in it because he is stipulating it.

MS. DEVINE: Right. I just wanted to pull up the case, just to make sure of any case law on Westlaw, but that's my understanding, it's only if he answers no to the Court's colloquy.

THE COURT: Yes, if he denies that it's him.

MS. DEVINE: Right.

THE COURT: So he admits it, that these are both his felony convictions, and he also admitted to the jury that he had two felony convictions, so the purpose of having an habitual offender trial doesn't exist because the issue is moot, so we are not going to have one, so go ahead and

excuse the jury. Thank you. Okay. The jury is going to be excused. (The jury was excused at this time.)

THE COURT: It would be a complete and total waste of time to do anything else since he's admitted his previous criminal record. Sentencing will be January 22nd, 2015, at 2:30 p.m.

I find no fault with what the trial judge did here. The only issue to be tried to a jury would be whether Harrington was the person previously convicted of the two felonies, and Harrington admitted he was.

Rule 2.19(9) does not have the same bells and whistles as rule 2.8(2). For example, it does not mandate that the defendant be informed of the mandatory minimum punishment, maximum possible punishment, the right of trial by jury, or the necessity to file a timely motion in arrest of judgment in order to challenge the plea. *See id.* r. 2.8(2)(*b*)(2), (2)(*b*)(4), (2)(*d*).

There is good reason for these differences. A defendant often pleads guilty as part of a risk–reward calculus to avoid the possibility of more severe consequences if he or she goes to trial and is convicted. In such cases, there is an open question whether the defendant is actually guilty of the charge or charges to which he or she is pleading guilty, but the defendant is concerned that things would end up worse if a jury finds him or her guilty of all the charged offenses following a trial. There, it is imperative that the defendant be fully informed of the adverse consequences of pleading guilty and the rights he or she is giving up by not going to trial.

But stipulating to the prior convictions in the enhancement phase rarely if ever involves such a strategic choice. Usually, a defendant admits the prior convictions because a trial would be a waste of time. Thus, while the defendant should certainly be cognizant of what he or

she is doing, I question whether the colloquy needs to include all the items identified by the majority in this case.

Rule 2.19(9) reflects the differences between the two proceedings. Therefore, it does not require the defendant to be told of the right to a jury trial on the prior convictions. After all, the defendant has just been through a jury trial and should have a good understanding of what that entails.

Nor does rule 2.19(9) require the defendant to be told of the right to file a motion in arrest of judgment to challenge his stipulation to the convictions. A timely motion in arrest of judgment is a way to challenge a guilty plea after the fact, but proceedings to determine prior convictions are subject to the normal rules of error preservation. In fact, objections other than identity are supposed to be asserted *before trial*. *See id.* r. 2.19(9) ("Other objections shall be heard and determined by the court, and these other objections shall be asserted prior to trial of the substantive offense in the manner presented in rule 2.11."); *see also State v. Long*, 814 N.W.2d 572, 574 (Iowa 2012) ("The rule also requires that if the defendant has any other objections to the prior conviction evidence, he must assert those objections prior to trial.").

There is some logic to this as well. If a guilty plea is taken but later set aside based upon a motion in arrest of judgment, no jury has been dismissed because none was ever summoned. But if the defendant is permitted to withdraw at a later date from a stipulation to prior convictions, then it is necessary to start over with a new jury. This should be avoided, so long as the process is fair to the defendant.

In *State v. Kukowski*, we held that a defendant's admission of prior convictions in the enhancement phase must be "voluntary and intelligent," and I have no quarrel with that proposition. *See* 704 N.W.2d

687, 693 (Iowa 2005). Also, *State v. Brady* can be read as indicating that the court has an obligation to inform the defendant of the punishment resulting from the enhancements. *See* 442 N.W.2d 57, 58–59 (Iowa 1989).

My review of the record convinces me that Harrington made a voluntary and intelligent admission of his prior felony convictions, not just at the enhancement phase but when he testified at trial. Harrington had considerable understanding of the criminal justice system and actively participated with counsel and the court in various discussions that took place outside the presence of the jury. The district court also advised Harrington, albeit at the beginning of trial, of the effects of the enhancement. *See State v. Oetken*, 613 N.W.2d 679, 688 (Iowa 2000) (finding no error when "[t]he trial court discharged its duty to inform the defendant as to the ramifications of an habitual offender adjudication").

Furthermore, *Kukowski* held that an abuse of discretion standard applied to a defendant's attempt to withdraw an admission of prior convictions. *See* 704 N.W.2d at 693. We said that reversal was required only when the abuse of discretion was prejudicial. *See id.* at 693–94. In finding prejudice in that case, we observed, "If the court had accepted defense counsel's earlier denial of the prior convictions, then there would have been no other evidence before the court to support the prior conviction at issue." *Id.* at 694. The present case is different, because Harrington had already admitted his convictions during the principal trial. If *Kukowski* remains the law, then I think affirmance is required here.

Again, I do not dispute that the majority's approach may have merit going forward. But given the current state of the law and the record in this case, I would affirm the proceedings below including the

thoughtful decision of the court of appeals. We should look to rulemaking for any needed amendments to rule 2.19(9).

Waterman, J., joins this dissent.