# IN THE COURT OF APPEALS OF IOWA

No. 24-0511
Filed June 18, 2025

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**RAUL LOUIS LIENDO,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Muscatine County, Meghan Corbin, Judge.


　　　　A defendant appeals his conviction and sentence for introduction of contraband onto the grounds of a jail. **CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR FURTHER PROCEEDINGS.**


　　　　Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

　　　　Brenna Bird, Attorney General, and David Banta, Assistant Attorney General, for appellee.


　　　　Considered without oral argument by Ahlers, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

An intoxicated Raul Liendo showed up at the Muscatine County Jail to serve a five-day jail sentence with a bottle of Fireball whiskey in his pocket. He was convicted of introducing contraband onto the grounds of a jail in violation of Iowa Code section 719.7(3)(a) (2023). Following the jury trial on that charge, Liendo stipulated that he was a habitual offender. The district court imposed a suspended indeterminate sentence of fifteen years in prison, placed Liendo on probation, and ordered him to pay a fine of $1025.

On appeal, Liendo challenges the sufficiency of the evidence supporting his conviction, the district court's failure to engage in an adequate habitual-offender colloquy, and its imposition of a fine. The State concedes error on the last two claims but contests the first. So we start there.

**I.      Sufficiency of the Evidence**

We review Liendo's sufficiency-of-the-evidence challenge for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). In performing this review, "we are highly deferential to the jury's verdict," which is binding on this court "if the verdict is supported by substantial evidence." *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* While we consider all evidence in the record—not just evidence supporting guilt—we view that evidence "in the light most favorable to the State" and draw all "legitimate inferences and presumptions that may fairly and reasonably be deduced." *Cook*, 996 N.W.2d at 708 (citation omitted).

With that standard of review in mind, we turn to the marshaling instruction given to the jury:[1]

> The State must prove all of the following elements of Possession of Contraband in a Jail Facility:
> 1. Raul Liendo was confined in the Muscatine County Jail.
> 2. Muscatine County jail is a county jail.
> 3. On or about April 7, 2023 . . . Raul Liendo knowingly introduced an intoxicating beverage into or onto the grounds of the Muscatine County Jail.
> 4. The beverage introduced was an intoxicating beverage.

Liendo challenges the first, third, and fourth elements of the offense as marshaled.

## A.      Confined

On the first element, Liendo argues that he was not "confined" to the jail because he was not yet "committed," or "accepted for mittimus," when he arrived at the jail with the bottle of Fireball whiskey.  We agree with the State that because neither the legislature nor the jury instructions defined the word "confined," we can "look to other sources, including dictionaries and common usage."  *State v. Borchers*, No. 22-1454, 2024 WL 467375, at *4 (Iowa Ct. App. Feb. 7, 2024); *see also State v. Ellison*, 985 N.W.2d 473, 482 (Iowa 2023) ("[W]ords used in a jury

---

[1] Iowa Code section 719.7(3) provides three ways to commit the offense of "possessing contraband."  The marshaling instruction combined two of those alternatives—section 719.7(3)(a), which prohibits a person from "[k]nowingly *introduc[ing]* contraband into, or onto, the grounds of a . . . jail," and section 719.7(3)(c), which prohibits a person from "[k]nowingly . . . *possess[ing]* contraband *while confined* in a . . . jail." (Emphasis added.)  The trial information, however, only charged that Liendo "knowingly introduce[d] contraband" into the Muscatine County Jail.  Even though the instruction added a confinement element to the charged offense, no one objected, and so it's now the law of the case. *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020).  But we repeat our warning in *State v. Coleman*—which discussed a similarly inaccurate jury instruction for a charge under section 719.7(3)—that practitioners should not "read this opinion as approving of the quoted instruction as the most accurate statement of the statutory elements for this offense."  No. 23-0918, 2024 WL 4965860, at *2 n.2 (Iowa Ct. App. Dec. 4, 2024).

instruction 'need not be defined if they are of ordinary usage and are generally understood.'" (citation omitted)); *State v. Mathias*, 936 N.W.2d 222, 227 (Iowa 2019) ("When the legislature does not define [a] term, we look to the context in which the term appears and give it its ordinary and common meaning."). The State argues that online dictionaries define "confined" to mean "limited to a particular location,"[2] or "to keep someone closed in a place."[3] Giving the word that common meaning, we find there was substantial evidence that Liendo was confined in the Muscatine County Jail.

Liendo appeared in court at noon on April 7, 2023, and was ordered to report to the jail at 6:00 p.m. that day to begin serving a sentence on a prior charge. Liendo spent that window of time drinking with a friend. He showed up at the jail around 4:00 p.m. and buzzed the secure door at the south lobby entrance to be admitted. Although correctional officers cannot book an inmate more than one hour before their scheduled mittimus time, because the officers could see that Liendo was intoxicated and they were concerned for his safety, they admitted him into the south lobby of the jail.

The south lobby is a small waiting area at the jail with two doors—one to the outside of the building and another to the interior jail. Those doors are locked and can be opened only by the jail's master control officer. Once Liendo was inside the south lobby, correctional officers testified that he was not free to leave, both because jail staff had contacted deputy sheriffs to investigate his intoxication and because he had reported to the jail on a mittimus order. The supervising lieutenant

---

[2] *See* Merriam-Webster Dictionary, https://perma.cc/Y6C4-UEG8.
[3] *See* Cambridge Dictionary, https://perma.cc/4BAA-DM9R.

at the jail explained that typically, once someone reports for mittimus, "we don't want them to leave." Indeed, Liendo unsuccessfully tried to leave several times—pulling at both locked doors in the lobby. This evidence is sufficient to convince a rational trier of fact that Liendo was confined in the jail.

We would reach the same conclusion even with Liendo's more technical definition of "confined" as meaning "committed." The supervising lieutenant testified that "someone is formally in custody" at the jail "when we have . . . a lawful reason to hold them, such as we have charges. We have the mittimus. . . . And they were . . . ordered to be there by a judge." This testimony tracks with case law stating that "mittimus is synonymous with the word 'commitment.'" *State v. Robinson*, 262 N.W.2d 270, 271 (Iowa 1978); *accord State v. Huston*, 209 N.W.2d 42, 47 (Iowa 1973). So, even though Liendo had not been booked while he was waiting in the south lobby, he was "committed" to the jail by the court's order issuing mittimus.

### B. Knowingly Introduce

Liendo next argues that he "did not knowingly introduce an intoxicating beverage into the jail" because he testified at trial that he had forgotten the bottle of Fireball was in his pocket. Video from the south lobby shows that Liendo's claim is not true. Within four minutes after he was admitted into the south lobby, Liendo pulled the bottle out of his pocket and took a drink. He briefly placed the bottle on a chair next to him before putting it back into his pocket. Over the next forty or so minutes, Liendo moved the bottle around several times—pulling it out and looking at it, shifting it between pockets, and taking another drink. Liendo thus had "knowledge of the existence of the fact he was in possession of [Fireball whiskey]

when he entered into, or onto, the grounds of the jail." *State v. Monson*, No. 18- 0482, 2019 WL 320213, at *2 (Iowa Ct. App. Jan. 23, 2019) (interpreting section 719.7(3)(a) to "mean merely a knowledge of the existence of the facts constituting the crime" (citation omitted)).

Relying on a specific intent instruction given to the jury, Liendo contends the State had to prove a higher level of knowledge: that "not only was Liendo aware he possessed an intoxicating beverage and did so voluntarily, but he did so with the specific purpose of introducing it into the jail." While we question the impact (and applicability) of the specific intent instruction,[4] which was not referenced in the marshaling instruction or closing arguments, we conclude the evidence was sufficient to establish that specific intent despite Liendo's intoxication.[5] *See State v. Guerrero Cordero*, 861 N.W.2d 253, 259 (Iowa 2015) (requiring a "high level of intoxication to support a finding of no specific intent"), *overruled on other grounds by Alcala v. Marriott Int'l Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). Liendo interacted

---

[4] As our supreme court explained in *State v. Canas*, 597 N.W.2d 488, 495 (Iowa 1999), the "term 'specific intent' describes a special mental element above and beyond any mental state required with respect to the actus reus of the crime." The court in *Canas* concluded "the offense criminalizing the introduction of controlled substances into a detention facility" in section 719.8 was a general intent crime because it "does not require an intent to do any further act or achieve some additional consequence other than the prohibited conduct of introducing a controlled substance into a detention facility." 597 N.W.2d at 495–96; *see also* Iowa Code § 719.8 ("A person not authorized by law who furnishes or knowingly makes available a controlled substance or intoxicating beverage to an inmate at a detention facility, or who introduces a controlled substance or intoxicating beverage into the premises of such a facility, commits a class "D" felony."). Section 719.7(3)(a) is similarly limited to the knowing introduction of contraband, with no intent to do any further act.
[5] Although intoxication is not a defense to a general intent crime, *see State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986), the jury received an instruction on that defense.

with multiple officers and never disclosed that he had the bottle of Fireball, which he was careful to keep in his pocket when they were in the room with him. One of the correctional officers pointed out a segment from the video that appeared to show Liendo trying to hide the bottle as he drank from it. The bottle was discovered only when the officers were patting Liendo down before taking him into the jail's interior. A jury could reasonably infer from this evidence that Liendo intended to introduce the whiskey into, or onto the grounds of, the jail. *See State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999) (noting that we may rely on "the facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances" to assess intent).

### C. Intoxicating Beverage

Finally, Liendo contends the State failed to prove that he introduced an intoxicating beverage into the jail because the liquid inside the Fireball bottle was not tested. In making this argument, Liendo relies on his testimony that before he went to the jail, he drank all the whiskey in the bottle and poured an energy drink into it. The jury was free to reject that explanation and instead accept testimony from the officers who handled the bottle and said that it contained an intoxicating beverage. *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) ("It is not our place 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" (citation omitted)).

Those officers testified that the bottle they removed from Liendo's pocket was labeled "Fireball" and had a distinctive red cap. The transparent bottle, with its label and red cap, can be seen on the video from the south lobby. The liquid

inside the bottle was amber, which officers testified resembled whiskey. The officer who disposed of the liquid confirmed that it "looked and smelled like Fireball whiskey" when he dumped it out. Liendo admitted that he bought a bottle of Fireball earlier in the day and that the liquid inside was whiskey-colored. And when Liendo was given a preliminary breath test just after taking a drink from the bottle, the reading came back as "HI," which an officer testified happens if the person consumed alcohol in the last fifteen minutes before the test. Jurors using their common knowledge and experience could reasonably conclude from this evidence that the liquid in the Fireball bottle was whiskey, an intoxicating beverage. *See State v. Manning*, 224 N.W.2d 232, 236 (Iowa 1974). We accordingly find that the jury's verdict is supported by substantial evidence, despite the inaccurate but unchallenged jury instructions that increased the State's burden and were a boon to Liendo.

## II. Sentencing Issues

For his sentencing challenges, Liendo argues that the district court failed to conduct an adequate habitual offender colloquy and incorrectly imposed a fine of $1025 that was not authorized by the sentencing statutes for habitual offenders or the underlying offense. The State agrees, as do we.

Because admission to prior offenses under the habitual offender enhancement is akin to a guilty plea, the district court "must ensure that the admission is 'voluntary and intelligent,' and that the defendant understands 'the ramifications of an habitual offender adjudication.'" *State v. Harrington*, 893 N.W.2d 36, 45 (Iowa 2017). To meet that standard, the court must inform the defendant of the following: (1) the nature of the habitual offender enhancement,

including that the prior felony convictions are valid only if the defendant was either represented by or waived counsel; (2) the maximum punishment, including any mandatory minimums; (3) the trial rights in Iowa Rule of Criminal Procedure 2.8(2)(b) and that no trial will take place by admitting the prior convictions; and (4) that any challenges to an admission based on defects in the habitual offender proceedings must be raised in a motion in arrest of judgment to preserve a right to appeal. *Id.* at 45–46; *State v. Smith*, 924 N.W.2d 846, 852–53 (Iowa 2019).

While the district court confirmed that Liendo was represented by counsel in his prior convictions, the court failed to advise him about the maximum and mandatory minimum punishments for the habitual offender enhancement; the trial rights in rule 2.8(2)(b) and that no trial would take place by admitting the prior convictions; and the right to challenge the admission through a motion in arrest of judgment.[6]  Because the colloquy here "leaves us 'unable to conclude [the] admission was knowingly and voluntarily made,'" we affirm Liendo's conviction but reverse the habitual offender judgment and vacate the sentence.  *Smith*, 924 N.W.2d at 853 (quoting *Harrington*, 893 N.W.2d at 47).  We remand for further proceedings consistent with the requirements of *Harrington* or, if Liendo denies the prior convictions or their validity, for trial on whether he qualifies as a habitual

---

[6] Liendo is not precluded from challenging his habitual offender admission on appeal because the court failed to inform him about this last right. *See Smith*, 924 N.W.2d at 851 ("[N]o offender in a habitual offender stipulation proceeding should suffer *Harrington*'s error preservation sanction unless the court has complied with its duty under *Harrington* to inform the offender that challenges to the stipulation proceedings must be raised in a motion in arrest of judgment and the failure to do so precludes raising those challenges on appeal.").

offender. *Id*. Our reversal of Liendo's judgment and vacation of his sentence also vacates the unauthorized fine imposed as part of that sentence.[7]

**CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[7] The habitual offender provisions apply to persons convicted of class "C" or class "D" felonies. *See* Iowa Code § 902.8. Liendo's conviction was a class "D" felony. *See id.* § 719.7(4). Neither section 902.9(1)(c), the sentencing statute for habitual offenders, nor section 719.7(4) authorized the court to impose a fine. *See State v. Halterman*, 630 N.W.2d 611, 613 (Iowa 2001) (vacating fine imposed on a habitual offender where no separate statute imposed a fine against the defendant).