# IN THE COURT OF APPEALS OF IOWA

_____

No. 25-0981
Filed May 27, 2026

_____

**Kurt Alan Olson,**
Applicant–Appellant,
v.
**State of Iowa,**
Respondent–Appellee.

_____

Appeal from the Iowa District Court for Tama County,
The Honorable Andrew Chappell, Judge.

_____

**AFFIRMED**

_____

Chad R. Frese of Frese & Waters, LLP, Marshalltown,
attorney for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney
General, attorneys for appellee.

_____

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Chicchelly, J., takes no part. Opinion by Schumacher, P.J.

1

**SCHUMACHER, Presiding Judge.**

Kurt Olson appeals the district court's denial of his application for postconviction relief following his 2017 convictions for two counts of indecent contact with a child and three counts of assault with intent to commit sexual abuse. He claims his trial counsel was ineffective by failing to ensure the district court followed the colloquy requirements for stipulating to prior convictions set forth in *State v. Harrington*, 893 N.W.2d 36, 45–46 (Iowa 2017). Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

In this court's prior opinion affirming Olson's conviction on direct appeal, we set forth the following facts:

> Olson began dating Lindsay in 2010. Lindsay has two children, E.R. and a younger son. When Lindsay and Olson first began dating, E.R. was eight years old. Lindsay, E.R., and E.R.'s younger brother would spend weekends at Olson's home. At trial, E.R. testified that when she was eight years old, Olson began touching her in a sexual manner.

> In October 2016, E.R. confided in her grandmother that Olson had been touching her in a sexual manner for several years. E.R.'s grandmother encouraged her to tell a school counselor. E.R. spoke with her school counselor, Carrie Elsinger, a mandatory reporter, who contacted the Iowa Department of Human Services (DHS). Law enforcement investigated and charged Olson with two counts of indecent contact with a child and three counts of assault with intent to commit sexual abuse.

> E.R. testified at trial and described the following incidents: When she was eight years old, she was sitting on a couch in Olson's home, and Olson sat down next to her. He started "grazing his hand against her leg, and he got close to her private area," at which point E.R. moved away. Olson did it again, and E.R. got up; Olson told E.R. "it was okay" and she "needed to just sit back down." E.R. testified she was scared and went to the bathroom and cried. She told her mother about the incident the next day, but her mother said Olson was "just trying to help" her.

On another occasion, when E.R. was ten years old, Olson was in his garage grilling with Lindsay and E.R. He asked Lindsay to go inside the house and get something for the grill. He then "told E.R. to come closer to him." E.R. testified, "I was scared and I didn't really want to. And then he made me give him my hand." He told E.R. to close her eyes and he then "put my hand by his private area and he made me touch him that way." He also told E.R. he was not wearing underwear. E.R. testified she told her mother about this incident but Lindsay did not do anything.

When E.R. was twelve, she and her brother were sleeping on the couch bed at Olson's home. E.R. had "tucked a blanket underneath" her foot "so he wouldn't touch me," but she felt Olson "digging." She testified she "moved really close and put my body kind of into a ball and tucked my blanket underneath more," but Olson got closer. She testified she said, "No, stop, this isn't okay." Olson got up and responded, "Okay, fine, goodnight drama queen."

E.R. also testified to repeated incidents of "wrestling"—Olson would wrestle with E.R. and touch her inappropriately. She testified,

> He would like attack me and he would try to get on top of me and then he would like try like thrash around. Then he would stick his hand through my shirt sleeve and then into my bra and then he would touch my chest that way.

On cross-examination, E.R. testified her mom was often present during the wrestling but Olson kept the touching from her view or E.R. "figured that she knew so she would have said something, but she didn't." E.R. also testified Lindsay was sleeping in a blue chair by the couch while the incidents on the couch happened. E.R. clarified after cross-examination that Olson only touched her genitals, which she called "private parts," over clothing but touched the skin of her breasts.

Sheriff's deputy Detective Bruce Rhoads testified about his interview with Lindsay. Lindsay admitted to him she "knew something was wrong" and that E.R. had told her she was being touched inappropriately. Detective Rhoads testified Lindsay was charged with child endangerment. Lindsay testified she was getting a "deal" in exchange for her testimony in Olson's case. Lindsay admitted that E.R. told her about the incident in the garage but she continued to bring her children over to Olson's house and did not report any incidents to the police.

> Kamille Martin, a child and dependent adult abuse protection worker with the DHS testified. She attended an interview of E.R. at the child protection center (CPC) after the allegations came to light. Kristen Kasner, a nurse at CPC, also testified and said that E.R. showed no physical signs of sexual abuse upon examination.
>
> The defense put on evidence from one witness, Ken Hart, a counselor at E.R.'s school. E.R. testified she told Hart about the abuse when she was eight. Hart testified E.R. never reported to him she had been sexually abused; they had only discussed some family issues.

*State v. Olson*, No. 17-1872, 2019 WL 1492639, at *1–2 (Iowa Ct. App. Apr. 3, 2019) (cleaned up).

Before closing arguments, defense counsel informed the court that if the jury found Olson guilty "on any of the counts," Olson was "going to stipulate to the second phase of his bifurcated trial that he had a prior charge out of Black Hawk County and that he was on the registry" and therefore the defense would "not be asking to have the jury decide those issues." The court responded, "So . . . if it's a verdict of guilty, we would hold [the jury in their deliberation room] and make a record of the stipulation on the record, and then once that is concluded, then the matter will be concluded."

After closing arguments, the court again made "a brief record with regard to . . . a stipulation that the parties wish to discuss relative to [Olson's] prior records" in the event the jury returned a guilty verdict. Olson agreed that "if we were to challenge that, there would be witnesses brought in [by the State] to corroborate that."

The jury found Olson guilty on all five counts as charged. The following colloquy then took place:

> COURT: It is the Court's understanding at this time that the parties have previously reached an agreement that the enhancements in

each of the five counts would be stipulated to. Is that the continuing understanding of the State?

STATE: That's the State's understanding, yes.

COURT: And [defense counsel]?

DEFENSE COUNSEL: Yes, that's correct.

COURT: All right.

DEFENSE COUNSEL: Your Honor, I would request respectfully that the Court would again just for the record ask Mr. Olson if that's what he wants to do. I'd appreciate that. Thank you, Judge.

COURT: Mr. Olson, we previously discussed that there would be a stipulation relative to the elements of enhancement with regard to each of those five counts, those dealing with [Iowa Code] section 692A.108 [(2016)], regarding the registry, as well as a previous conviction of an offense . . . . Are you still intending to stipulate at this time?

OLSON: Yes.

COURT: All right. So let's go through those just ever so briefly then. With regard to each of the counts: One, two, three, four and five, they're enhancements—those are including that the Defendant was a registered sex offender in violation of the sex offender registry requirements specified in 692A.108 of the Iowa Code, and that having been found by this jury to have committed a sex offense against a minor as defined in 692A, that that is in violation of 692A.111(1), a class C felony. You understand that you are stipulating that you were at the time of the offenses charged in count one, two, three, four and five, at all of those times a registered sex offender in violation of the sex offender registry requirements of the State of Iowa?

OLSON: Yes, ma'am.

COURT: And with regard to the second enhancement, this is relative to each of the five counts as well, that you're stipulating that at the time of each of the five counts that are alleged in this matter, that you had previously been convicted of a sexual predatory offense for enticing away a child . . . and that the same would be—in that you will serve twice the maximum period of incarceration of those offenses pursuant to Chapter

5

901A.2(1) if so convicted, and you do so stipulate that you did have a previous sexually predatory offense conviction in this Black Hawk County case number; is that correct?

OLSON: Yes.

COURT: And that that Black Hawk County case conviction predated each one of the five acts in each of the counts?

OLSON: Yes, ma'am.

COURT: All right. Any further record that you believe needs to be made, [State]?

STATE: Not at this time, your Honor.

COURT: [Defense counsel]?

DEFENSE COUNSEL: No, your Honor.

The district court entered judgment and sentenced Olson. This court affirmed his convictions on appeal. *Olson*, 2019 WL 1492639, at *2–6. Olson applied for postconviction relief (PCR), raising several ineffective-assistance-of-counsel claims. Following a hearing, the court denied his application. Olson appeals.

## STANDARD OF REVIEW

"We ordinarily review PCR rulings for correction of errors at law." *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022). "However, when the applicant asserts claims of a constitutional nature, our review is de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). Accordingly, "we review claims of ineffective assistance of counsel de novo." *Id.*

## DISCUSSION

On appeal, Olson challenges the court's denial of his claim of ineffective assistance of counsel stemming from counsel's failure to object to

the adequacy of the court's colloquy concerning his stipulation to his prior conviction and status on the sex offender registry. Specifically, Olson maintains the court failed to follow the colloquy requirements for prior-conviction stipulations for habitual-offender enhancement purposes set forth by the supreme court in *Harrington*, 893 N.W.2d at 45–46, which was decided one month prior to Olson's criminal trial. There, the supreme court instructed:

> First, the [district] court must inform the offender of the nature of the habitual offender charge and, if admitted, that it will result in sentencing as a habitual offender for having "twice before been convicted of a felony." The court must inform the offender that these prior felony convictions are only valid if obtained when the offender was represented by counsel or knowingly and voluntarily waived the right to counsel. As a part of this process, the court must also make sure a factual basis exists to support the admission to the prior convictions.
>
> Second, the court must inform the offender of the maximum possible punishment of the habitual offender enhancement, including mandatory minimum punishment. In the typical case, the court must ensure the offender understands he or she will be sentenced to a maximum sentence of fifteen years and that he or she must serve three years of the sentence before being eligible for parole. If the offender faces a greater mandatory minimum punishment or maximum possible punishment due to the present offense charged, the court must inform the offender of the specific sentence he or she will face by admitting the prior offenses.
>
> Third, the court must inform the offender of the trial rights enumerated in Iowa Rule of Criminal Procedure 2.8(2)(b)(4). . . .
>
> Fourth, the court must inform the offender that no trial will take place by admitting to the prior convictions. The court must also inform the offender that the state is not required to prove the prior convictions were entered with counsel if the offender does not first raise the claim.
>
> Finally, we reiterate that the district court must inform the offender that challenges to an admission based on defects in the habitual offender proceedings must be raised in a motion in arrest of judgment. The district

> court must further instruct that the failure to do so will preclude the right
> to assert them on appeal.

*Harrington*, 893 N.W.2d at 45–46 (citations omitted).

To establish ineffective assistance of counsel, Olson must show (1) counsel's performance fell below objectively reasonable standards and (2) if counsel had acted differently, there would have been a reasonable probability of a different outcome. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Here, we concur with the PCR court that the prior-conviction colloquy was lacking in several respects, leaving the court "unable to conclude [Olson's] admission was knowingly and voluntarily made." *See Harrington*, 893 N.W.2d at 47.

Nonetheless, if Olson's ineffective-assistance "claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma*, 626 N.W.2d at 142. Here, on the prejudice prong, the question is whether Olson can prove that had trial counsel ensured a proper colloquy for his stipulation there would be a reasonable probability of a different outcome below. *See Uranga v. State*, No. 24-0196, 2025 WL 1324125, at *3 (Iowa Ct. App. May 7, 2025).

Preliminarily, we note that Olson does not address the prejudice prong of *Strickland* in his appellate brief, and he presented no evidence to the PCR court to support his claim. At the PCR hearing, Olson agreed his sexual-abuse charges were enhanced "[b]ased upon a prior qualifying offense from [his] past." He did not argue the result of the proceeding would have been different with a proper colloquy. "On this record, we could summarily reject his claim[]." *Jordan v. State*, No. 24-0310, 2025 WL 1704298, at *2 (Iowa Ct. App. June 18, 2025); *see Johnson v. State*, No. 24-0190, 2025 WL 855675,

at *1 (Iowa Ct. App. Mar. 19, 2025). But we elect to address the merits of the prejudice claim.

And we concur with the PCR court that Olson has failed to prove prejudice. As the court found:

> First, despite any deficiency in the trial court's colloquy, Olson indeed exercised both his right to request a new trial *and* to file a motion in arrest of judgment. The motions were just unsuccessful. Second, the State had not shirked its responsibility to prepare to prove up the alleged convictions. [The State] had subpoenaed witnesses to testify about Olson's convictions in the event guilty verdicts were secured, and both [defense counsel] and Olson knew that. Third, there is no evidence disputing that the underlying convictions occurred and that Olson was represented by counsel at the time. Fourth, and finally, Olson failed to testify that, had the trial court complied with *Harrington* in every way possible, he would have done anything differently. That is, Olson fails to argue that he would have required the State to prosecute the enhancement phase of his trial had he only known more about his trial rights, etc. Under the circumstances presented, the evidence presented is simply insufficient to undermine the Court's confidence in the outcome of the trial.

We further observe that the underlying record detailed Olson's criminal history to include a conviction for a sexually predatory offense of enticing away a minor. *See Bender v. State*, No. 19-1231, 2020 WL 5651681, at *2 (Iowa Ct. App. Sep. 23, 2020) (rejecting the applicant's claim that trial counsel was ineffective by failing to object to the court's failure to follow the *Harrington* colloquy requirements because his underlying colloquy occurred prior to the *Harrington* decision and noting that, in any event, the applicant failed to prove prejudice necessary to sustain his claim). The minutes of testimony set forth Olson's status as a registered sexual offender. The record also showed that witness testimony would be provided as to Olson's conviction. *See id.* "With this evidence in the hands of the State, we find no reasonable probability that, but for counsel's alleged error, [Olson] would

have insisted on proceeding to trial or that the result of the proceeding would have been different." *Id.*

Accordingly, Olson has not demonstrated prejudice. We affirm the district court's order denying his PCR application.

**AFFIRMED.**