# IN THE COURT OF APPEALS OF IOWA

No. 16-1369
Filed October 11, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LLOYD R. HAYWOOD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.


        Lloyd Haywood appeals four convictions following his guilty pleas to two charges and jury verdicts finding him guilty of two lesser-included charges.

        **JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**


        Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.


        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

In 2015, Lloyd Haywood was charged by trial information with seven crimes relating to two separate incidents that occurred the same day. The charges were later severed into two matters to be tried separately. Haywood elected to have a jury trial on the offenses relating to the first incident. The jury found Haywood guilty of two lesser-included offenses and acquitted Haywood of the three other counts. Haywood later pled guilty to the two severed charges related to the second, later incident. He now appeals his convictions. We affirm in part, reverse in part, vacate in part, and remand with instructions.

### I. Background Facts and Proceedings.

Concerning the first incident, "[v]iewing the trial evidence in the light most favorable to the jury's guilty verdicts," *State v. Romer*, 832 N.W.2d 169, 172-73 (Iowa 2013), the jury could have found the following facts in support of their two convictions. In October 2015, law enforcement officers were dispatched to the home of Gina Harkey, Haywood's then girlfriend, after several 9-1-1 calls were made about an ongoing physical disturbance occurring outside her home. Officers learned Haywood lived with Harkey and there had been an altercation involving Haywood, Harkey, and Harkey's two daughters. Harkey's daughters had come to their mother's home with a plan to get Harkey to leave with them and away from Haywood. Ultimately, Haywood was arrested and transported to the Dubuque County jail.

The second incident occurred after Haywood arrived at the jail and Dubuque County Deputy Sheriff Sara Miller had begun the process of booking Haywood. The minutes of testimony indicate the deputy was documenting

information into the computer, and she and Haywood "were separated only by a tabletop/counter." Towards the end of the booking process, Haywood "was venting his frustrations with the arresting officers, . . . pacing back and forth near the bench in the booking room [and] speaking in a loud and agitated tone about police officers." Next, "while Haywood was standing directly in front of [the deputy], . . . Haywood made the comment something similar to 'You guys have always been good to me . . . .' Haywood then took two small steps back and proceeded to retrieve a knife from his person." The knife was described as a "small folding pocket knife." While

> holding the knife in his left hand at chest level, . . . [Haywood] then stated, "The f*cking guys in blue are so dumb, they can't even find this knife. . . ." Haywood then took two steps forward towards the counter and towards Deputy Miller and violently stabbed the countertop with the knife. . . . Haywood used such force that it caused the knife to penetrate the wood and remain lodged in the countertop. . . . Haywood then walked back away from the countertop at which time Deputy Miller removed the knife and requested assistance. . . . Haywood went on to tell Deputy Miller, "You know, I could have taken you hostage and got out of jail. . . ." Deputy Miller continued to [complete] the booking process and asked Haywood where he had concealed the knife . . . . Haywood replied the knife was in his back left pocket. . . . [Deputy Miller was asked] . . . if she was in fear for her safety given Haywood's action. . . . Deputy Miller responded, "Yes," . . . [she] was afraid that Haywood was going to assault her with the knife due to the violent and aggressive behavior he demonstrated when he stabbed the countertop along with the multitude of comments he was making while venting his frustrations with officers about his arrest.

In addition to public intoxication, a simple misdemeanor, Haywood was subsequently charged by trial information with seven counts, five of which were related to his actions at Harkey's home ("domestic disturbance"): first-degree burglary, domestic abuse assault causing bodily injury, and three counts of first-

degree harassment.[1]   The other two criminal counts—assault with the use or display of a dangerous weapon and first-degree harassment—were based upon Haywood's actions at the jail ("jail disturbance").  Haywood filed a motion seeking to sever the charges and have two separate trials set, one for the counts related to the domestic disturbance, and one for the counts related to the jail disturbance.  Following a hearing, the court severed the two matters and ordered two separate trials before different juries.

Haywood proceeded to trial on the five counts relating to the domestic disturbance in April 2016.  The jury found Haywood guilty of only two of the counts, and in both instances, the jury found Haywood guilty of lesser-included offenses of domestic abuse assault (without bodily injury) and third-degree harassment.  Haywood was acquitted of first-degree burglary and the two first-degree harassment charges related to Harkey's daughters.  That day, the court entered a "Reset Order" setting dates for a pretrial conference and a jury trial in May 2016 concerning the two jail-disturbance counts.

Sentencing on the convictions relating to the domestic disturbance was continued several times, as was the trial concerning the jail-disturbance counts.  On the date set for a pretrial conference concerning the jail-disturbance counts— August 1, 2016—Haywood entered into a written agreement with the State, agreeing he would plead guilty to the two jail-disturbance counts in exchange for dismissal of the public-intoxication charge and a favorable sentencing recommendation by the State.  Haywood admits in his brief that, in signing the

---

[1] Harkey and her two daughters were each named as the victim in separate first-degree harassment charges.

guilty-plea form, he agreed the minutes of testimony were substantially correct.[2]

The form also stated, in relevant part, "DEFENDANT WILL PAY THE

FOLLOWING COURT COSTS: Domestic, 3D Degree harasment assault while

Display 1st Harassment, Public Intox."

The sentencing hearing was held as scheduled and reported. The court

stated at the outset that Haywood's two convictions relating to the domestic

disturbance—domestic abuse assault without bodily injury, second offense, an

aggravated misdemeanor, and third-degree harassment, a simple

misdemeanor—were set for sentencing that day. The court went on to state:

> In addition, two of the other counts in the trial information [relating
> to the jail disturbance] had been severed out and were not tried to
> the jury, and since then [Haywood] has reached an agreement with
> the State. The State's going to make a sentencing
> recommendation. [Haywood] has pled to [the two jail-disturbance
> counts]. [One count] is charged as assault with the use or display
> of a dangerous weapon . . . .
>> . . . .
>> [T]hat's an aggravated misdemeanor, and then [the other
>> count] is harassment in the first degree, also an aggravated
>> misdemeanor, and there is a written guilty plea that [Haywood]
>> signed and was filed on August 1st of 2016. So if I'm right, we're
>> dealing with one simple misdemeanor and three aggravateds for
>> sentencing today.

Haywood's counsel affirmed that Haywood had pled guilty to the jail-disturbance

charges and that the court had accurately classified Haywood's four convictions.

---

[2] We note that the paragraph relating to reliance upon the minutes of testimony in the filed written guilty plea appears in the appellate record as follows:

> . . agree the Minutes of Testimony are substantially correct or I did the following act(s) to commit this crime:
> _____

We do not know if the original form signed by Haywood is as it appears in the record—cut off and formally missing a numbered paragraph ten—or if it was only missing from the copy filed electronically. Nevertheless, Haywood does not argue his pleas were made unknowingly or unwillingly here. We only point the matter out to reinforce to trial attorneys and district courts the necessity of ensuring the electronic trial record is complete when scanned documents are added to the trial record.

After hearing from Haywood and the State, the court sentenced Haywood to a term of incarceration not to exceed two years on each of the three aggravated-misdemeanor convictions, to be served concurrently, but the court suspended the sentences and placed Haywood on informal probation for two years. Haywood was sentenced to thirty days on the simple-misdemeanor conviction and credited with time served.

Haywood now appeals.[3]

## II. Discussion.

Through his appellate counsel, Haywood argues his trial counsel rendered ineffective assistance when he allowed him to plead guilty, asserting there was no factual basis to support his guilty pleas. He also argues through counsel that the district court abused its discretion when it denied his motion for a mistrial, maintaining he was denied a fair trial when the State, in violation of the court's motion-in-limine ruling, presented a video containing a statement concerning Haywood's alleged drug use.[4] Additionally, Haywood asserts numerous pro se claims.[5] The State resists. We address the arguments in turn.

---

[3] We note the Iowa Supreme Court granted discretionary review of Haywood's simple-misdemeanor conviction pursuant to Iowa Rule of Appellate Procedure 6.108 and consolidated the appeal.

[4] Haywood's appellate counsel also raises two other issues—the validity of Haywood's second-offense stipulation and the costs assessed by the court. The State concedes both issues have merit and warrant reversing and remanding with respect to those issues. We agree and will address the points in our closing without further discussion.

[5] Haywood also recently filed pro se his "Motion to Reverse Appeal Pursuant to Iowa App. P. 6.1006(3)," which we denied by order filed September 15, 2017. On September 27, 2017, Haywood filed a second "Motion to Reverse" pursuant to rule 6.1006(3) which we have denied in this opinion.

### A. *Ineffective Assistance of Trial Counsel.*

Ordinarily, challenges to guilty pleas are reviewed for correction of errors at law. *See State v. Nall*, 894 N.W.2d 514, 517 (Iowa 2017). "However, to the extent a defendant claims [the] guilty plea was the result of trial counsel's ineffective assistance, our review is de novo." *Id.* Although ineffective-assistance-of-counsel claims are usually addressed in postconviction-relief proceedings, they can be considered on direct appeal if the record is adequate. *See State v. Harris*, 891 N.W.2d 182, 186 (Iowa 2017). We conclude the record is adequate here. To succeed on a claim of ineffective assistance of counsel, a defendant must prove "by a preponderance of evidence that '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *Id.* at 185 (citation omitted). If Haywood cannot establish both elements, his claim fails; thus, if we find one element lacking, we need not address the other element. *See State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016); *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015).

"A defendant waives a variety of constitutional rights by pleading guilty to a criminal offense, and it is fundamental that a plea of guilty is valid only if it is given voluntarily, knowingly, and intelligently." *State v. Meron*, 675 N.W.2d 537, 542 (Iowa 2004). Accordingly, a guilty plea cannot be accepted by the court "without first determining it is made voluntarily and intelligently and has a factual basis." *State v. Harrington*, 893 N.W.2d 36, 45 (Iowa 2017). If trial counsel allows the defendant to plead guilty to a charge that lacks a factual basis, "counsel has failed to perform an essential duty" and prejudice is presumed. *Nall*, 894 N.W.2d at 525. "When a defendant alleges a factual basis did not exist

to support his or her guilty plea, it is the court's obligation to examine the entire record to see if a factual basis for the guilty plea existed." *Yocum v. State*, 891 N.W.2d 418, 419 (Iowa 2017). This includes consideration of the minutes of testimony and the presentence investigation report. *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014). Furthermore, "the record does not need to show the totality of evidence necessary to support a guilty conviction, but it need only demonstrate facts that support the offense." *State v. Ortiz*, 789 N.W.2d 761, 768 (Iowa 2010).

The two crimes at issue here are first-degree harassment and assault with the use or display of a dangerous weapon. Dissecting the first, a "person commits harassment when the person, purposefully and without legitimate purpose, has personal contact with another person, with the intent to threaten, intimidate, or alarm that other person." Iowa Code § 708.7(1)(b) (2015). The crime is raised to the highest degree "when the person commits harassment involving a threat to commit a forcible felony." *Id.* § 708.7(2). Using the ordinary meaning of the word, a "threat" means to "promise punishment, reprisal, or other distress to" another. *State v. Milner*, 571 N.W.2d 7, 10 (Iowa 1997). "Threats need not be explicit; they may be made by innuendo or suggestion" and need only "be definite and understandable by a reasonable person of ordinary intelligence." *State v. Crone,* 545 N.W.2d 267, 271 (Iowa 1996). "Moreover, in considering whether a reasonable person of ordinary intelligence would interpret another's statement as a threat, the statement is viewed in light of the surrounding circumstances." *Milner*, 571 N.W.2d at 10.

A "forcible felony" includes kidnapping. *See* Iowa Code § 702.11. Kidnapping occurs when a person

> confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:
> . . . .
> 2. The intent to use such person as a shield or hostage.

*Id.* § 710.1.

So, putting all of this together, to show a factual basis for first-degree harassment in this case, the minutes of testimony must evidence Haywood: (1) purposefully and without legitimate purpose had personal contact with Deputy Miller, (2) with the specific intent to threaten, intimidate, or alarm Deputy Miller, and (3) threatened to commit a forcible felony (kidnapping). We find the minutes satisfy this burden. Haywood essentially argues his words to Deputy Miller that he "could have taken [her] hostage and got out of jail" was not an actual threat but rather an expression of his frustration at the arresting officers and does not show an intent to intimidate, alarm, or annoy Deputy Miller. But viewing Haywood's statement in light of the surrounding circumstances—i.e., his pulling an undisclosed pocket knife from his person and stabbing it deep in the counter in front of Deputy Miller—a reasonably intelligent person would—and Deputy Miller did—interpret Haywood's statement as a threat of kidnapping intended to alarm, intimidate, or annoy her.

Haywood's second conviction—assault with the use or display of a dangerous weapon—occurs when a person intentionally "displays in a

threatening manner any dangerous weapon toward another" without justification.

*Id.* § 708.1(2)(c). The term "dangerous weapon" encompasses

> any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed . . . . Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon. Dangerous weapons include but are not limited to any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, switchblade knife, knife having a blade exceeding five inches in length . . . .

*Id.* § 702.7; *see also Ortiz*, 789 N.W.2d at 767 (breaking down the definition of "dangerous weapons" in section 702.7 into three categories: instruments that were both designed for and have "the primary purpose of inflicting death or injury" but are not listed in section 702.7; per se dangerous weapons that are specifically listed in section 702.7; and instruments that, while not designed for the primary purpose of inflicting death or injury, were capable of and actually used in a manner as to indicate that the defendant intended to inflict death or serious injury upon the other). A "serious injury" is a bodily injury that either creates a substantial risk of death, causes serious permanent disfigurement, or causes protracted loss or impairment of the function of any bodily member or organ. *Id.* § 702.18. A pocket knife is neither a per se dangerous weapon nor a weapon designed for and having "the primary purpose of inflicting death or injury." Consequently, to show a factual basis for assault with the use or display of a dangerous weapon, the minutes of testimony must evidence Haywood displayed in a threatening manner an instrument that was capable of inflicting

death or serious injury upon Deputy Miller *and* did so in a manner that indicated he intended to inflict death or serious injury upon Deputy Miller.

"Practical experience tells us that a box cutter or utility knife when so intended is capable of inflicting death." *Ortiz*, 789 N.W.2d at 767. The same can be concluded about a pocket knife. Finally, considering the circumstances of the situation and Haywood's hostage comment, a reasonable person could conclude Haywood used the pocket knife in a manner that indicated he intended to, at a minimum, seriously injure Deputy Miller. Thus, the pocket knife was a dangerous weapon as defined in section 702.7. Haywood's pulling of an undisclosed dangerous weapon from his person and stabbing it deep in the counter in front of Deputy Miller certainly constitutes displaying the dangerous weapon in a threatening manner. For these reasons, we find the minutes of testimony evidence a factual basis to support Haywood's assault-with-the-use-or-display-of-a-dangerous-weapon conviction.

Because the minutes of testimony demonstrate facts that support both offenses to which Haywood pled guilty, Haywood's trial counsel was not ineffective for permitting him to enter guilty pleas on that basis.

### B. Motion for Mistrial.

Prior to trial on the five charges related to the domestic disturbance, both Haywood and the State filed motions in limine. At the motion in limine hearing, the district court did not rule definitively on Haywood's request that his prior bad acts, including prior drug use, be excluded from evidence. In its motion in limine, the State requested that the State's witnesses' prior bad acts, including prior drug use be excluded. Haywood resisted asserting the evidence "goes to the witness'

credibility." Haywood believed "the State is going to get into [his] past drug use and why the relationship was what it was and had to do with [his] past drug use, so it that's fair game, then all of the witnesses that the State calls and their repeated drug use, that should be fair game as well." During the discussion of this issue, the State represented to the court it had no intent of bringing up any evidence of Haywood's prior drug use. The court commented evidence of Haywood's prior drug use "would be quite prejudicial," but "if the door is opened up and drug use starts getting talked about, I think it's probably fair game that it gets talked about with everybody, including nonparty witnesses. I'd rather it not, unless it's necessary." With regard to Haywood's credibility argument, the court concluded

> But I'm not sure that you can impeach credibility or attack credibility just by saying you've used drugs, so I'm hesitant to say, yes, you can do that. I guess I would say hold off on that until we get a chance to look at that issue a little further.

During testimony from one of the law enforcement officers, the video from the officer's squad-car camera that also captured the audio from the officer's body microphone was played for the jury. In that video, an exchange occurred between an officer and one of Harkey's daughters wherein the officer asked the daughter if Haywood was on something. She told the officer, "Probably, he's a crack head." The officer repeated, "He's a crack head?" She answered, "He's a f*cking crack head." In the background, Haywood can be heard yelling. The challenged exchange lasted approximately seven seconds; this is all the jury heard on the issue.

After the State rested, Haywood's trial counsel moved for a mistrial arguing the evidence violated the court's motion-in-limine ruling excluding such references. The State resisted, arguing the exchange was quick and not dwelled upon. The court agreed and denied the motion, explaining:

> Based on the totality of what happened here that night, all of the different videos that the jury has seen, all of the witnesses that have testified, and there have been numerous police officers and [Harkey] and both of her daughters and [others], we've had a lot of witnesses, a lot of videos that we've watched and a lot of testimony, I don't believe that that kind of a statement would be prejudicial and would rise to the level of a mistrial when we have the counts that we have charged here.

The court indicated it was hesitant to give the jury a limiting instruction on the matter because it believed it would only draw attention to the brief exchange, which may or may not have been heard by some of the jurors. The court requested Haywood and his counsel discuss whether a limiting instruction should be given and let the court know if it was desired. There is no indication that a limiting instruction was requested thereafter.

Haywood argues the court abused its discretion in denying his motion for a mistrial. "Generally, a trial court has wide discretion in granting or denying a mistrial," *State v. Huser*, 894 N.W.2d 472, 498 (Iowa 2017), as the court "is in the best position to appraise the effect of any alleged misconduct." *State v. Frei*, 831 N.W.2d 70, 80 (Iowa 2013). Generally, the court's "discretion may be reversed on appeal only when it is demonstrated" the trial court's discretion "'was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Huser*, 894 N.W.2d at 498 (citation omitted); *see also State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989). In the context of a motion for mistrial

based upon a violation of a motion-in-limine ruling, to establish reversible error, Haywood bears the burden of showing the violation resulted in prejudice that deprived him of a fair trial. *See Frei*, 831 N.W.2d at 80-81.

Upon our review of the record, considering the whole trial, we cannot find an abuse of discretion in denying Haywood's motion for a mistrial. Several factors demonstrate Haywood was not deprived of a fair trial. First, the alleged bad act—prior drug use—is so unrelated to the charges at hand that they do not tend to show conforming conduct. *See State v. Martin*, 704 N.W.2d 665, 673 (Iowa 2005). Moreover, the exchange containing the alleged prior drug use was isolated; there were no other statements given nor efforts made to inject the potentially prejudicial matter before the jury. *See State v. Greene*, 592 N.W.2d 24, 32 (Iowa 1999). In fact, the exchange was so isolated and brief, we agree with the district court that a curative instruction would likely have only drawn undue attention to the minor mention. *See, e.g.*, 4A B. John Burns, *Iowa Practice Series: Criminal Procedure* § 19:3 (2017 ed.) (noting "counsel may consider declining a curative instruction" for strategic reasons in some circumstances "to avoid reinforcing the taint of the original mention"); Robert E. Larsen, *Navigating the Federal Trial* § 4:12 (2017 ed.) (noting the "prejudiced party may ask the judge to do nothing in response to a violation of an order in limine" for tactical reasons, such as avoiding undue emphasis of the problem to the jury). Finally, we note Haywood's trial counsel was partially successful; the jury acquitted Haywood of three charges and convicted on two lesser-included charges. *See State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004) ("We also note the court acquitted the defendant of the kidnapping charge, an indication the bad-

acts evidence did not motivate the fact finder to categorically rule against the defendant."); *State v. Rodriquez*, 636 N.W.2d 234, 243 n.4 (Iowa 2001) (noting jury acquitted defendant of one offense, which indicated a lack of prejudice); *State v. Smith*, 573 N.W.2d 14, 22 (Iowa 1997) (finding trial counsel was not ineffective for not moving for a mistrial, noting, among other factors, counsel was "partially successful, resulting in an acquittal on one charge and conviction on a lesser included offense on another count"). Under the facts and circumstances of this case, the trial court did not abuse its discretion in denying the motion for a mistrial.

### C. Pro Se Claims.

Haywood also asserts several pro se claims, but he does not state how error was preserved on each claim. "Error preservation is a fundamental principle of law with roots that extend to the basic constitutional function of appellate courts." *Harrington*, 893 N.W.2d at 42. "Its purpose is to allow the district court to correct error without the necessity of an appeal," and it further "serves to create a record for appellate review." *Id.* Consequently, "[i]ssues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." *State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008); *see also Lee v. State*, 844 N.W.2d 668, 676-77 (Iowa 2014) ("As a general proposition, 'issues must be raised in the district court before we may review them on appeal.'" (citation omitted)). There are, of course, exceptions to the rule. For instance, the error-preservation rule generally does not apply "to void, illegal or procedurally defective sentences." *State v. Richardson*, 890 N.W.2d 609, 615 (Iowa 2017). Similarly, claims of ineffective assistance of counsel "are not bound

by traditional error-preservation rules." *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006); *see also Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016) ("To the extent error is not preserved on an issue, any objections must be raised within an ineffective-assistance-of-counsel framework.").

Importantly, these rules apply to claims raised by pro se appellants. It has long been the rule that procedural rules apply equally to parties who are represented by counsel and to those who are not. *In re Estate of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct. App. 1997) ("Substantial departures from appellate procedures cannot be permitted on the basis that a non-lawyer is handling [his or] her own appeal."). Pro se parties receive no preferential treatment. *See Hays v. Hays*, 612 N.W.2d 817, 819 (Iowa Ct. App. 2000). "The law does not judge by two standards, one for lawyers and the other for lay persons. Rather, all are expected to act with equal competence. If lay persons choose to proceed pro se, they do so at their own risk." *Metro. Jacobson Dev. Venture v. Bd. of Review*, 476 N.W.2d 726, 729 (Iowa Ct. App. 1991). Although this may seem harsh to a pro se litigant, it is justified by the concept that appellate judges must not be cast in the role of advocates for a party who fails to comply with court rules and inadequately presents an appeal. *See State v. Piper*, 663 N.W.2d 894, 913-14 (Iowa 2003).

Upon our review, we find Haywood only raised one of his pro se claims before the district court—his claim that he was denied a preliminary hearing. Haywood does not direct us to, nor do we find, evidence in the record showing Haywood preserved his other claims for our review, and he does not cast those claims here as ineffective-assistance-of-counsel claims to obviate application of

the ordinarily error-preservation rules. Consequently, we address the only issue we find preserved for our review.

Haywood argues he was denied a preliminary hearing in violation of his constitutional rights and the district court should have granted the motion to dismiss the trial information. Our review is for correction of errors at law. *See State v. Rimmer*, 877 N.W.2d 652, 660 (Iowa 2016).

Procedurally, an arrested person that is taken into custody "in the manner authorized by law" is to be presented before a magistrate for an initial appearance. *See* Iowa R. Crim. P. 2.2(1); *see also State v. Williams*, 895 N.W.2d 856, 865 (Iowa 2017). "Once the arrested person is before the magistrate, the arrest process is complete, the person is no longer under the control of the arresting officer, and all the rights under the law available to defendants become applicable . . . ." *Williams*, 895 N.W.2d at 865. "If the defendant . . . was arrested without a warrant, the magistrate shall, prior to further proceedings in the case, make an initial, preliminary determination from the complaint . . . whether there is probable cause to believe that an offense has been committed and that the defendant has committed it." Iowa R. Crim. P. 2.2(1). If the magistrate finds probable cause, the magistrate must advise the defendant of several rights, including "the right to a preliminary hearing unless . . . a trial information is filed against the defendant or unless preliminary hearing is waived in writing or on the record." Iowa R. Crim. P. 2.2(4)(a). If a preliminary hearing is requested and no trial information has been filed, the magistrate must schedule the hearing to "be held within a reasonable time but in

any event not later than [ten] days following the initial appearance," and the magistrate must inform the inform the defendant of the date it set.  *Id.*

The key here is that rule 2.2(4)(a) does not contemplate holding a preliminary hearing if a trial information has been filed.  The purpose of a trial "information is to apprise the defendant of the crime charged so that the defendant may have the opportunity to prepare a defense."  *State v. Grice*, 515 N.W.2d 20, 22 (Iowa 1994).  "Prior to the filing of the information, it must be approved by a district judge, or a district associate judge or judicial magistrate" after finding "the evidence contained in the information and the minutes of evidence, if unexplained, would warrant a conviction by the trial jury."  Iowa R. Crim. P. 2.5(4).  Thus, "[w]hen the court approves the trial information, it determines whether there is probable cause to detain the defendant to answer the charge."  *State v. Petersen*, 678 N.W.2d 611, 614 (Iowa 2004).  A preliminary hearing serves the same purpose; it "is required in order to determine the legality of detaining a person accused of a felony or an indictable misdemeanor before the State files a charge by a trial information or a grand jury indictment."  *Id.* at 613; *see also State v. Shank*, 296 N.W.2d 791, 792 (Iowa 1980).  Consequently, once the trial information is filed, having been approved by a judge, a preliminary hearing is not necessary.  *See Petersen*, 678 N.W.2d at 613.

Here, Haywood was arrested on Thursday, October 15, 2015.  Haywood went before the district associate judge for an initial appearance the next morning.  The court found probable cause to believe Haywood had committed the crimes that were charged in the complaints, and that day, as requested by Haywood, the court set a preliminary hearing for October 22, 2015.  However,

the hearing on October 22 was not held. Instead, the State filed a trial information the next day, October 23, charging Haywood with seven counts with a judge's approval.

October 22 is seven days from the date of his arrest by police; six days from the date Haywood went before the magistrate. *See Williams*, 895 N.W.2d at 867 (holding the speedy indictment rule "is triggered from the time a person is taken into custody, but only when the arrest is completed by taking the person before a magistrate for an initial appearance"); *see also* Iowa Code § 4.1(34) (setting forth how to compute time). Though it is unclear why the preliminary hearing did not occur as scheduled, once the State filed its trial information, the preliminary hearing was unwarranted.

Moreover, a "violation in the complaint stage of the proceedings does not affect the merits of the charge, but only affects the legality of the detention of the accused to answer the charge prior to the filing of the information." *Petersen*, 678 N.W.2d at 614. Specifically, the "remedy for a defendant who claimed that his constitutional right to a preliminary hearing had been denied" is seeking a habeas corpus proceeding, not dismissal of the charges or "voidance of a subsequent conviction." *State v. Rouse*, 290 N.W.2d 911, 913 (Iowa 1980), *superseded on other grounds by Ryan v. Arneson*, 422 N.W.2d 491, 494 (Iowa 1988); *see also* 4A B. John Burns, *Iowa Practice Series: Criminal Procedure* at § 4:3. Here, Haywood's right to a preliminary hearing was not violated and, in any event, any error was cured by the State's filing of the trial information.

### *III. Conclusion.*

Because the minutes of testimony demonstrate facts that support both offenses to which Haywood pled guilty, Haywood's trial counsel was not ineffective for permitting him to enter guilty pleas on that basis. Additionally, under the facts and circumstances of this case, the trial court did not abuse its discretion in denying the motion for a mistrial. Haywood's pro se claims were either not preserved for appellate review or are without merit. Finally, the State concedes Haywood's second-offense stipulation was invalid because there is no evidence in the record that the district court undertook a colloquy similar to a guilty-plea colloquy to verify the stipulation was knowingly and voluntarily made. *See Harrington*, 893 N.W.2d at 45-48 (detailing the colloquy the court must undertake before accepting a habitual or second-offense stipulation "to ensure the affirmation is voluntary and intelligent, including an understanding of the rights associated with the trial"). The State also agrees that controlling Iowa Supreme Court authority requires that the costs assessed to Haywood, to the extent that they were attributable or discrete to the dismissed counts, be reversed. *See State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991); *see also State v. Johnson*, 887 N.W.2d 178, 182-83 (Iowa Ct. App. 2016) (vacating "that portion of the sentencing order assessing court costs against Johnson for the dismissed counts" and remanding "for entry of a corrected sentencing order assessing Johnson with the appropriate court costs").

Accordingly, we reverse the judgment and sentence of the district court in so far as it accepted Haywood's stipulation to his second offense without verifying Haywood knowingly and voluntarily admitted his prior conviction. *See*

*Harrington*, 893 N.W.2d at 48. We also vacate Haywood's sentence in part as to any costs assessed against him for the dismissed or acquitted counts. *See Petrie*, 478 N.W.2d at 622; *see also Johnson*, 887 N.W.2d at 183. We remand to the district court for further proceedings consistent with this opinion or for trial if Haywood denies his prior conviction or its validity, and for the court to make a more detailed order on the costs it assessed to Haywood—ensuring that none of the costs assessed were clearly attributable or discrete to the dismissed counts, and if so, removing them from the assessment. *See Harrington*, 893 N.W.2d at 48; *Petrie*, 478 N.W.2d at 622; *see also Johnson*, 887 N.W.2d at 183.[6] We affirm in all other respects.

On September 27, 2017, Haywood filed a "Motion to Reverse" pursuant to Iowa Rule of Appellate Procedure 1.1006(3). Having reviewed the motion and finding it without merit, we deny the motion.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.**

---

[6] We note the mere fact that counts were dismissed does not automatically establish part of the court costs are attributable to the dismissed counts. Many of the normal court costs would have been the same had there been one or twenty counts. On remand, the record needs to be analyzed to determine if any of the assessed costs were clearly attributable or discrete to the dismissed counts, and those costs only need to be removed from the assessment. *See Johnson*, 887 N.W.2d at 182; *see also State v. Kirk*, No.16-1930, 2017 WL 2875695, at *2-3 (Iowa Ct. App. July 6, 2017) (Doyle, J., concurring specially).