# IN THE COURT OF APPEALS OF IOWA

No. 17-0190
Filed February 7, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL LEROY ALLIE,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Boone County, Paul G. Crawford, District Associate Judge.

Defendant challenges his conviction and sentence for possession of methamphetamine. **JUDGMENT REVERSED IN PART AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Following a jury trial, Michael Allie was convicted of possession of methamphetamine, third or subsequent offense, in violation of Iowa Code section 124.401(5) (2016). Allie stipulated to two prior felony convictions and was sentenced as a habitual offender pursuant to Iowa Code section 902.8. The district court sentenced Allie to an indeterminate term of incarceration not to exceed fifteen years but suspended the sentence and placed Allie on supervised probation. Allie timely filed this appeal. Allie raises several challenges in this appeal: he challenges the sufficiency of the evidence supporting his conviction; he contends the district court abused its discretion in denying his motion for new trial; he argues his trial counsel was ineffective; and he contends the colloquy related to the habitual offender enhancement was inadequate.

I.

Boone County Deputy Sheriffs Preston King and Doug Twigg went to Allie's residence to execute a warrant for Allie's arrest. After the deputies knocked on the door, Allie opened the door, went outside, and was placed in handcuffs. From here, the parties differ.

At the time of the arrest, Deputy King was a new deputy on field training. Deputy King testified he searched Allie's person prior to putting Allie in the back of the patrol car. Deputy King found a small plastic baggie in the front pocket of Allie's shorts. Deputy King observed a "white powdery substance in it." Deputy King asked Allie what it was. Allie replied he did not know. Deputy King gave the baggie to Deputy Twigg. Deputy Twigg observed it was "a clear plastic baggie with a white

residue in it." Deputy Twigg testified he believed the substance was methamphetamine.

Allie called his long-time friend Sherri Norley to testify. Norley was having dinner with Allie at the time of Allie's arrest. Norley testified Allie went outside after the police knocked on the door. She testified she went outside a few minutes after Allie. At the time she went outside, Allie was already under arrest. She testified she was speaking with Deputy Twigg and observed the Deputy King walk with Allie to the deputy's vehicle. Deputy King searched Allie's person and found money in Allie's pocket. At Allie's direction, Deputy King gave the money to Norley. Norley testified Deputy King started walking Allie to the back of the vehicle. She testified Deputy King "bent down and picked a bag up off the ground" and handed the bag to Deputy Twigg, with whom she had been speaking. She testified the baggie was four to five feet from the area where Deputy King searched Allie. On cross-examination the prosecutor asked Norley if the defendant was wearing shoes when the deputies arrived. She answered Allie was wearing flip-flops. Upon further questioning, she denied that Allie refused to allow the deputies accompany him into the home to retrieve a pair of shoes.

On rebuttal, Deputy Twigg testified he asked Allie if Allie wanted to go back into the home because Allie "didn't have shoes or socks." Deputy Twigg testified Allie chose not to go back into the home because Deputy Twigg told Allie he would have to be accompanied into the home. With respect to the search of Allie's person, Deputy Twigg testified he did not observe the search because he was speaking with Norley. Twigg testified Norley could not have observed Deputy King's search of Allie's person based on his recollection of where she was

positioned while he was speaking with her. Deputy Twigg testified Norley did not make any statement at the time of the search that the baggie was picked up off the ground.

The deputies transported Allie to the Boone County Jail. The baggie was field tested and then sent to the Iowa Division of Criminal Investigation for further testing. Criminalist Gladfelter testified at trial. He testified the baggie contained a "white powdery substance." Gladfelther testified there was not enough product in the baggie to weigh and test the product. He testified he rinsed the baggie with methanol to obtain a sample of the residue. The residue contained methamphetamine.

## II.

Allie argues there is insufficient evidence to establish he knowingly possessed methamphetamine. Specifically, he contends there is not sufficient evidence of knowing possession due to the small amount of residue in the baggie and the absence of other suspicious behavior on his part.

This court reviews challenges to the sufficiency of the evidence for the correction of legal error. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Under this standard, we will affirm when the verdict is supported by substantial evidence. *See State v. Webb*, 648 N.W.2d 72, 75 (Iowa 2002). Evidence is substantial when the evidence is sufficient to "convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.* at 76. In conducting substantial-evidence review, this court considers the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *See id.* "Inherent in our standard of review of jury verdicts in

criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006).

Where the jury was instructed without objection, as is the case here, the jury instruction becomes law of the case for the purposes of reviewing the sufficiency of the evidence. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). This jury was instructed the State must show Allie "knowingly or intentionally possessed methamphetamine" and that he "knew the substance he possessed was methamphetamine." Under this instruction, the State had to prove Allie "exercised dominion and control over the contraband, had knowledge of the contraband's presence, and had knowledge the material was a narcotic." *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014). "The knowledge required for the [knowing possession] elements can be, and because of their subjective nature often must be, inferred." *State v. Pore*, No. 03-0784, 2004 WL 1254318, at *3 (Iowa Ct. App. June 9, 2004); *accord State v. Reeves*, 209 N.W.2d 18, 22–23 (Iowa 1973).

In support of his argument, the defendant relies on *State v. Kopp*, 325 S.W.3d 466, 472 (Mo. Ct. App. 2010). In that case, the court held there was insufficient evidence to support a possession charge where the defendant was in possession of a syringe and the syringe tested positive for methamphetamine. *See id.* at 473. Critical to the court's conclusion was the fact the residue was not visible. *See id.* at 472–73 ("[N]o inference of Defendant's knowledge of the presence and nature of the methamphetamine can be drawn from the fact that he could see it. It was not visible. Defendant's knowledge, if it may be inferred at all, must be inferred from other facts.").

The facts of this case are readily distinguishable. Deputy King testified the baggie was found in Allie's pocket. Unlike *Kopp*, here the deputies testified the baggie contained a *visible* white powdery substance. The criminalist testified to the same. While the amount of product in the bag was insufficient to weigh, the evidence showed the product tested positive for methamphetamine. The jury was free to infer the defendant was also able to see the white powdery substance in the baggie and further infer the defendant knew the contents of the baggie. Thus, when the evidence is viewed in the light most favorable to the jury's verdict, there is substantial evidence in support of the conviction. *See, e.g., State v. Simpson*, 587 N.W.2d 770, 774 (Iowa 1998) (affirming a conviction where defendant possessed crack pipes containing burnt residue); *State v. Tekippe*, No. 07-1840, 2009 WL 1492660, at *3 (Iowa Ct. App. May 29, 2009) (rejecting the argument on appeal that "the evidence is insufficient to support his conviction because any possession was not done 'knowingly' due to the small amount of residue which lacked visibility and due to the absence of suspicious behavior on his part"); *State v. Martin*, No. 03-2092, 2005 WL 425488, at *3 (Iowa Ct. App. Feb. 24, 2005) (finding officer's statement that residue was sufficient for a conviction to be "a correct statement of the law in Iowa"); *Pore*, 2004 WL 1254318, at *3 (finding cocaine residue along with exclusive possession sufficient for conviction).

III.

Allie contends the district court erred in denying his motion for new trial. The motion for new trial was filed pursuant to Iowa Rule of Criminal Procedure

2.24(2)(b)(8), which allows the court to grant new trial when "the defendant has discovered important and material evidence in the defendant's favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial." In his motion for new trial, Allie claimed he discovered the Inmate Personal Property List at the Boone County jail. The property list is a log of personal items in the defendant's possession at the time of booking. The property list showed Allie was wearing flip-flops at the time he was booked into the Boone County jail. According to Allie, this evidence would have impeached Deputy Twigg's testimony that Allie was not wearing shoes or socks at the time of the arrest. This evidence also would have bolstered, or so Allie argues, Norley's testimony regarding the facts and circumstances surrounding the arrest.

This court reviews rulings on motions for new trial for an abuse of discretion. *See State v. Smith*, 573 N.W.2d 14, 17 (Iowa 1997). "A district court should grant a motion for a new trial only in exceptional circumstances." *State v. Ary*, 877 N.W.2d 686, 705–06 (Iowa 2016). The trial court's discretion in granting or denying a motion for new trial is 'unusually broad' when the new trial motion is grounded on newly-discovered evidence. *State v. Miles*, 490 N.W.2d 798, 799 (Iowa 1992). "We give weight to the district court's conclusion that the proffered newly-discovered evidence would have altered the trier-of-fact's decision to convict had the evidence been introduced at trial." *State v. Weaver*, 554 N.W.2d 240, 244–45 (Iowa 1996), *overruled on other grounds by State v. Hallum*, 585 N.W.2d 249, 253–54 (Iowa 1998); *State v. Compiano*, 154 N.W.2d 845, 849 (Iowa 1967) ("The trial court is generally in a better position than we to determine whether evidence, newly discovered, would probably lead to a different verdict upon retrial, and we have

often said we will not interfere with its ruling unless it is reasonably clear that such discretion was abused.").

We cannot conclude the district court abused its discretion in denying Allie's motion for new trial. To obtain relief, Allie had to show: "(1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial." *Harrington v. State*, 659 N.W.2d 509, 516 (Iowa 2003). Allied failed to establish why the evidence could not have been discovered earlier in the exercise of due diligence; the log was created at the time Allie was arrested. It was readily available at any time. At the hearing on the motion for new trial, counsel stated she obtained the log with a phone call to the jail. In addition, Allie failed to show the evidence was material to trial. The dispute regarding whether Allie was wearing shoes or flip-flops is immaterial to the possession charge. At best, even according to Allie, the evidence would only go to credibility, which is insufficient to justify relief. Under the very limited standard of review, we cannot say the district court abused its broad discretion in denying this motion.

IV.

Allie contends his trial counsel was ineffective in two respects. He argues his trial counsel was ineffective in failing to seek a continuance of trial to obtain the personal property list discussed above. He also contends his trial counsel should have objected to Deputy Twigg's rebuttal testimony regarding Allie's decision to not enter the house to retrieve a pair of shoes.

We note that filing a claim for ineffective assistance of counsel on direct appeal is unnecessary to protect the defendant's right to seek relief. *See* Iowa Code § 814.7 ("The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes."). A party "may, but is not required to, raise an ineffective assistance claim on direct appeal . . . if the party has reasonable grounds to believe that the record is adequate to address the claim on direct appeal." Iowa Code § 814.7(2). The presentation of an underdeveloped claim on direct appeal is *strongly discouraged*. The presentation of an underdeveloped claim wastes the party's resources and judicial resources. More important, the presentation of an underdeveloped claim poses a litigation risk to the defendant, who may receive an adverse judgment on a potentially meritorious claim due to the presentation of a claim on an underdeveloped record. *See State v. Joiner*, No. 15-1600, 2017 WL 1400804, at *2 (Iowa Ct. App. Apr. 19, 2017); *State v. Eaton*, No. 14-0789, 2014 WL 7367008, at *1 n.1 (Iowa Ct. App. Dec. 24, 2014).

One of the claims presented here presents a classic example of the presentation of a claim of ineffective assistance of counsel on an undeveloped record. Trial counsel's decision to forego a potentially meritorious objection to a piece of evidence or testimony is frequently a tactical decision. *See State v. Clay*, 824 N.W.2d 488, 500–01 (Iowa 2012) ("What we do not know is whether trial counsel's failure to object to these statements was a trial tactic or strategy. Did trial counsel think the defense would be stronger if the testimony came in as hearsay, rather than live? Until the record is developed as to trial counsel's state of mind, we cannot say whether trial counsel's failure to object implicated trial

tactics or strategy."). Because of the tactical nature of the decision, resolving claims related to counsel's failure to object to certain testimony is particularly inappropriate on direct appeal.

We reject Allie's claim of ineffective-assistance of counsel with respect to the newly discovered evidence. As discussed above, the evidence was immaterial to the case. As such, Allie cannot establish *Strickland* prejudice. We preserve for postconviction relief proceedings Allie's claims of ineffective assistance of counsel with respect to the testimony regarding Allie's decision to not reenter the home.

V.

Allie's last challenge is to the adequacy of the district court's colloquy regarding the habitual offender sentencing enhancement. We review claims of error in complying with rules for correction of errors at law. *See* Iowa R. App. P. 6.907; *State v. Harrington*, 893 N.W.2d 36, 41 (Iowa 2017). Any constitutional claims are reviewed de novo. *See Harrington*, 893 N.W.2d at 41.

Iowa code section 902.8 provides for a habitual offender sentencing enhancement to be applied to a person convicted of a class "C" or class "D" felony, who has twice before been convicted of any felony. "A person sentenced as an habitual offender shall not be eligible for parole until the person has served the minimum sentence of confinement of three years." Iowa Code § 902.8. There are two methods by which the State can establish the prior convictions for the sentencing enhancement. After conviction, "the offender shall have the opportunity in open court to affirm or deny that the offender is the person previously convicted." Iowa R. Crim. P. 2.19(9). If the defendant denies being the person previously convicted, the defendant shall be entitled to a jury trial "on the issue of

the offender's identity with the person previously convicted." *Id.* If the offender admits to being the person previously convicted, the offender shall be sentenced in accord with the Code. *See id.* In *Harrington*, the supreme court held the district court must engage the offender in a colloquy prior to accepting the offender's admission of identity to the previous felony convictions. *See Harrington*, 893 N.W.2d at 45 ("[C]ourts must ensure that the admission is 'voluntary and intelligent', and that the defendant understands 'the ramifications of an habitual offender adjudication.'"). "Before a defendant admits to prior convictions, a court must inform the defendant concerning (1) the nature of the habitual offender charge; (2) the maximum possible punishment, including the mandatory minimum punishment; (3) the trial rights the defendant is waiving; (4) no trial will take place if defendant admits to the convictions; and (5) a challenge to an admission must be raised in a motion in arrest of judgment." *State v. Wade*, No. 16-0867, 2017 WL 2181450, at *5 (Iowa Ct. App. May 17, 2017).

After the jury returned its verdict in this case, the district court engaged in a colloquy with the defendant regarding the habitual-offender enhancement. Initially, the defendant stated he did not know whether he wished to stipulate to the prior felonies. The district court afforded Allie the opportunity to speak with counsel, and Allie's counsel requested the district court explain what the jury would have to find. The district court explained the State would have the burden of proving beyond a reasonable doubt that Allie was the person convicted of the prior felonies. The district court also explained the jury would have to be unanimous in its finding.

We cannot conclude the colloquy in this case complied or substantially complied with *Harrington*. Here, the district court failed to inform the defendant of

all of the trial rights the defendant would waive upon stipulating to the prior felony convictions. Specifically, the district court failed to advise Allie of the "right to assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right not to be compelled to incriminate oneself, and the right to present witnesses in the defendant's own behalf and to have compulsory process in securing their attendance." Iowa R. Crim. P. 2.8(2)(b)(4). The failure to inform the defendant of these rights renders the colloquy not substantially compliant with *Harrington*. *See State v. Straw*, 709 N.W.2d 128, 134 (Iowa 2006) (finding no substantial compliance where district court did not explain possible punishments); *State v. Meron*, 675 N.W.2d 537, 542 (Iowa 2004) (finding failure to discuss witnesses or self-incrimination was not substantial compliance and holding "[t]he record must confirm the existence of substantial compliance in listing each right."); *State v. Myers*, 653 N.W.2d 574, 578 (Iowa 2002) (finding failure to explain right to compel attendance of witnesses was not substantial compliance).

The State does not defend the adequacy of the habitual offender colloquy but instead contends Allie is not entitled to relief because he failed to preserve error on the issue. *Harrington* did "hold that offenders in a habitual offender proceeding must preserve error in any deficiencies in the proceeding by filing a motion in arrest of judgment." 893 N.W.2d at 43. The court held, however, that the error preservation rule would apply only prospectively. *See id.* Here, Allie did not file a motion in arrest of judgment to preserve error on the issue. However, the colloquy in this case occurred prior to *Harrington*. Allie was thus excused from the necessity of filing a motion in arrest of judgment to preserve error on this issue. *See State v. Steiger*, 903 N.W.2d 169, 170 (Iowa 2017) (reversing the judgment

and sentences for failure to comply with *Harrington* despite the lack of error preservation because "the error preservation rule . . . established in *Harrington* was not in existence at the time" of the colloquy).

In a similar vein, the State argues *Harrington* is inapplicable here because the supreme court did not make *Harrington* retroactive. While *Harrington* has "constitutional underpinnings," *see Harrington*, 893 N.W.2d at 48, it did not announce a new rule of constitutional law. As a non-constitutional rule of substantive law, the supreme court had several options in determining the scope of its application. *See Nguyen v. State*, 878 N.W.2d 744, 754 (Iowa 2016) ("We could apply full retroactivity, limited retroactivity, limited prospectivity, or full prospectivity."). When the State argues *Harrington* should not be applied "retroactively," we interpret the State to mean *Harrington* should not be applied to *any* colloquy occurring before *Harrington*. The supreme court already has implicitly rejected this position. The supreme court granted relief in *Steiger*, which involved a defective colloquy conducted prior to the *Harrington* decision. Thus, at minimum, the supreme court has concluded *Harrington* is applicable to all non-final cases pending on direct appeal or in the district court as of the date of the *Harrington* decision, April 7, 2017. *See Steiger*, 903 N.W.2d at 170 (reversing and remanding a pre-*Harrington* case for a proper hearing on prior convictions); *contra State v. Thornburg*, No. 16-2019, 2017 WL 4049526, at *4–5 (Iowa Ct. App. Sept. 13, 2017) (finding *Harrington* is not retroactive); *Wade*, 2017 WL 2181450, at *4 ("The rules, which specify how a court should conduct a habitual offender colloquy, appear to be procedural in nature, and we determine they should not be applied retroactively

in this case."). Allie's appeal was pending at the time *Harrington* was decided, and the rule should be applied in this case as in *Steiger*.

Finally, the State contends that even if *Harrington* is applicable here, Allie is not entitled to any relief because he has not established prejudice. This argument, too, already has been rejected by the supreme court. The "question on appeal is not whether [the defendant] suffered no prejudice because evidence existed to establish the prior convictions, but whether [the defendant] knowingly and voluntarily admitted the prior convictions." *Harrington*, 893 N.W.2d at 43 n.2. The court has an obligation to "ensure that the affirmation is voluntary and intelligent." *Id.* In the absence of a substantially compliant colloquy, it cannot be said the defendant's stipulation of the prior convictions was knowing and voluntary. *See id.* Prejudice is simply immaterial to the question presented.

We hold that *Harrington's* colloquy requirements shall be applied to all non-final cases pending on direct appeal or at the district court at the time of the *Harrington* decision. This case does not present, and we do not decide, the question of whether *Harrington* is to be applied retroactively to cases final at the time of that decision. We further hold the district court failed to conduct a substantially compliant habitual offender colloquy. In the absence of a compliant colloquy, the defendant's waiver of his right to jury trial on the issue of identity and stipulation to prior felony convictions was not knowing and voluntary.

VI.

We reverse in part the judgment and sentence of the district court. We

remand this matter to the district court to conduct a hearing on the prior convictions pursuant to Iowa Rule of Criminal Procedure 2.19(9) and *Harrington.*

**JUDGMENT REVERSED IN PART AND REMANDED.**