775 A.2d 32

IN THE MATTER OF THE GUARDIANSHIP OF N.J.,
S.J., C.A., J.A., AND E.J., MINOR CHILDREN.

NEW JERSEY DIVISION OF YOUTH AND FAMILY
SERVICES, PLAINTIFF–RESPONDENT, v.
D.M.J., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 27, 2001—Decided April 23, 2001.

Before Judges KESTIN and CIANCIA.

*Peter A. Garcia,* Acting Public Defender, attorney for appellant D.M.J. (*David M. Quirk,* Designated Counsel, on the brief).

*John J. Farmer, Jr.,* Attorney General, attorney for respondent (*Nancy Kaplen,* Assistant Attorney General, of counsel; *Nora P. Pearce,* Deputy Attorney General, on the brief).

*Peter A. Garcia,* Acting Public Defender, attorney for the minor children (*Deborah Klein Davis,* Assistant Deputy Public Defender/Law Guardian, relied on the brief submitted by Deputy Attorney General *Nora P. Pearce*).

The opinion of the court was delivered by

CIANCIA, J.A.D.

This is an appeal in a parental termination case that resulted in a judgment of guardianship entered upon the default of the parents. Only the mother, defendant D.M.J., sought to vacate the default judgment. Denial of that motion is the basis of the present appeal. We are entirely satisfied that the evidence in favor of the guardianship petition overwhelmingly supported the termination of parental rights. On the motion to vacate the default judgment there was no showing of a meritorious defense. D.M.J.'s only proffered reason for not appearing at the trial was that she had gone to Atlantic City and forgot the trial was scheduled. As the trial judge concluded, no grounds were presented which justified vacating the default judgment pursuant to *R.* 4:50–1. On appeal to this court, the arguments advanced are without sufficient merit to warrant discussion in a full written opinion. *R.* 2:11–3(e)(1)(E). We add only the following comments.

D.M.J. is the mother of six children, five of whom, all girls, are the subject of the present litigation.[1] D.M.J. has an extensive

---

[1] The sixth and oldest child, a sixteen-year-old boy, has lived with relatives most of his life but may now be residing with D.M.J.

history of drug addiction. Two of her daughters tested positive
for drugs at birth. Among other things, D.M.J. has consistently
refused to appear for court-ordered drug evaluations. The three
oldest girls were placed in foster care in 1997 at the ages of nine,
seven and six, respectively. A daughter born in July 1996, and a
daughter born in December 1998, were placed into foster care
shortly after birth. Over the years, D.M.J.'s contact with her
daughters has been minimal.

D.M.J. has a history of not appearing for court proceedings and
of not maintaining contact with her attorney. Since the end of
1997 she has failed to appear at nine of eleven hearings concerning
her children. The earlier hearings were *Title* 9 proceedings that
were conducted prior to the filing of the complaint for guardian-
ship in October 1999.

At the initial guardianship hearing on November 29, 1999,
D.M.J. did appear and requested counsel. That request was
granted and a pretrial hearing was scheduled for January 10,
2000. D.M.J. did not appear and a default was entered. When
the court learned D.M.J. was incarcerated, the default was vacated
and D.M.J. appeared in court on January 11, 2000, represented by
counsel. At that time, she was specifically cautioned that she
must stay in touch and let people know where she was or she
could be subject to a default that might result in the loss of her
children. A trial date of June 12, 2000 was set, and a summons
was given to D.M.J. before she left the courtroom.

Prior to trial, D.M.J. was to undergo court-ordered drug evalua-
tions, but failed to do so. As a result, D.Y.F.S. moved for entry of
default against D.M.J. and the natural father of three of the
children. It is not clear whether that application was ever specifi-
cally ruled upon because the parents, including D.M.J., did not
appear for trial on June 12, 2000. D.M.J.'s attorney had not had
contact with his client for some time prior to that date and did not
know her whereabouts. She also had not cooperated with her own
expert and, therefore, a psychological evaluation on her behalf had
not been prepared. The trial judge attempted to call D.M.J. on

the phone, but with no success. Default was entered and a proof hearing was conducted. The proofs were predominantly documentary. They exceeded a thousand pages. On June 20, 2000, the trial judge issued a detailed oral opinion terminating parental rights and granting guardianship of the five children to D.Y.F.S.

On July 17, 2000, D.M.J. moved to vacate default. She claimed she did not know the trial date. At the subsequent hearing on July 24, 2000, D.M.J. said she was in Atlantic City on June 12 and criticized her D.Y.F.S. caseworker for not letting her know the court date. The trial judge was satisfied D.M.J. had been given notice of the trial date and that she offered no sufficient reason for failing to appear. He also noted the inordinate length of time that the children had been in foster care.

In light of all the facts that preceded D.M.J.'s default and motion to vacate default judgment, we are satisfied that the trial judge did not abuse his discretion in refusing to vacate the default judgment. Unlike the circumstances we recently addressed in *In re Guardianship of A.M.B.*, 338 *N.J.Super.* 425, 769 *A.*2d 1071 (App.Div.2001), here the parent was well-aware of the possibility that failure to appear could result in entry of a default judgment terminating parental rights. Moreover, a proof hearing was conducted that permitted the trial judge to consider a vast array of records, reports and evaluations.

Finally, although technically the merits are not before us, we are satisfied from our review of the record that D.Y.F.S. proved by clear and convincing evidence each of the four prongs of the termination criteria developed by *New Jersey Division of Youth and Family Services v. A.W.*, 103 *N.J.* 591, 512 *A.*2d 438 (1986), and thereafter mandated by *N.J.S.A.* 30:4C–15.1. *See also In re Guardianship of K.H.O.*, 161 *N.J.* 337, 736 *A.*2d 1246 (1999).

The order denying the application to vacate the default judgment entered against D.M.J. is affirmed.