**IN THE COURT OF APPEALS OF IOWA**

No. 24-0942
Filed January 9, 2025

**IN THE INTEREST OF J.R.,**
**Minor Child,**

**J.J., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Butler County, Peter B. Newell, Judge.

　　A mother appeals the termination of her parental rights.  **AFFIRMED.**

　　Elizabeth M. Wayne of Papenheim Law Office, Parkersburg, for appellant mother.

　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　Joseph Martin, Cedar Falls, attorney for minor child.

　　Andrew C. Abbott of Abbott Law Office PC, Waterloo, guardian ad litem for minor child.

　　Considered en banc.

**BADDING, Judge.**

The juvenile court terminated a mother's parental rights to her child, born in 2011, after finding termination was appropriate under Iowa Code section 232.116(1)(f) (2024) and in the child's best interests. For the following reasons, we affirm.

## I. Waiver.

Before we discuss the merits of this appeal, we first address the State's claim that the mother waived all issues on appeal.

The mother received notice of the termination hearing but chose not to attend, declining to participate either in person or by telephone. During the hearing, her attorney offered no evidence and did not object to the State's evidence. Instead, the attorney relayed the mother's general resistance to termination and her preference for a guardianship. The attorney also cross-examined the social worker from the Iowa Department of Health and Human Services.

Despite the mother's non-attendance and her attorney's limited role in the hearing, the mother now appeals the juvenile court's termination order and disputes all three steps of our statutory termination framework. *See generally* Iowa Code § 232.116(1)–(3). The State argues the mother cannot raise these issues on appeal because she declined to participate in the termination hearing. It points to three of our unpublished decisions finding that a parent's "fail[ure] to attend trial and contest the elements waives appellate challenges to termination." *In re Q.B.*, No. 23-2112, 2024 WL 707194, at *1 (Iowa Ct. App. Feb. 21, 2024); *accord In re*

*M.F.*, No. 18-0289, 2018 WL 3057772, at *1 & n.2 (Iowa Ct. App. June 20, 2018); *In re M.L.H.*, No. 16-1216, 2016 WL 4803999, at *1 (Iowa Ct. App. Sept. 14, 2016).

There "is some tension in our cases" regarding what a parent must do to protect their right to appeal a termination of parental rights. *In re G.G.*, No. 22-1347, 2023 WL 152483, at *2 (Iowa Ct. App. Jan. 11, 2023). We have held that a parent leaves nothing for us to review when they fail to raise any argument in opposition at the hearing. *See In re P.S.*, No. 11-0516, 2011 WL 2714169, at *1 (Iowa Ct. App. July 13, 2011); *In re D.W.*, No. 14-0545, 2014 WL 2600358, at *1 (Iowa Ct. App. June 11, 2014). But we have also indicated that certain steps of the termination analysis are reviewable "regardless of whether the parent contests the issue." *In re A.B.*, No. 24-1241, 2024 WL 4502302, at *3 (Iowa Ct. App. Oct. 16, 2024) (quoting *In re C.H.-B*, No. 18-1246, 2018 WL 4627709, at *2 n.2 (Iowa Ct. App. Sept. 26, 2018)). We have sometimes asked whether waiver or preservation of error is the better framework for thinking about these questions. *See, e.g.*, *M.F.*, 2018 WL 3057772, at *1 n.2. Other times, we have simply acknowledged a problem without letting it stop us from reaching the merits. *See, e.g.*, *Q.B.*, 2024 WL 707194, at *1–2.

We take this opportunity to make two important clarifications. First, to the extent our unpublished decisions suggest otherwise, there is no categorical rule that a parent must personally participate in a termination hearing to preserve error or prevent a waiver on appeal. A parent's physical or remote participation in the hearing is a due process right, *In re M.D.*, 921 N.W.2d 229, 236 (Iowa 2018), but it is not a requirement for a parent represented by an attorney, *see Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 518 (Iowa 2012) (citing *In re J.S.*, 470 N.W.2d 48,

52 (Iowa Ct. App. 1991)). Even in the parent's absence, counsel may preserve issues for appellate review and avoid waiver by advocating the parent's position on the parent's behalf—including by challenging the State's evidence, introducing the parent's own evidence, or making arguments against termination.[1]

Second, our preservation rules are not one-size-fits-all. While issues generally must be raised in and decided by the juvenile court before they are raised on appeal, that is not the case when a parent argues the State failed to meet its burden of proof. Our supreme court has instructed that "the sufficiency of the evidence may be challenged on appeal even though not raised below." *In re A.R.*, 316 N.W.2d 887, 888 (Iowa 1982) (holding the preservation rule now codified under Iowa Rule of Civil Procedure 1.904(1) applies to juvenile proceedings);[2] *cf. State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) ("[A] defendant who proceeds to trial and has been convicted of a crime has, in fact, preserved error with respect to any claim challenging the sufficiency of the evidence.").

With these points in mind, we turn to the facts of this case. Although the mother did not personally participate in the termination hearing, she was represented by counsel, who made a modest but sufficient record of the mother's opposition to termination. Counsel declined to present evidence or substantive

---

[1] We do not reach the issue of whether the mere appearance of a parent's attorney is enough to clear the preservation and waiver hurdles because that is not the situation in the case before us. *Cf. M.L.H.*, 2016 WL 4803999, at *1 (finding a father's appeal was either waived or unpreserved where his "attorney did not introduce any evidence," "did not make any argument against termination," and told the court the father had "given up").

[2] Rule 1.904(1) provides that when the court tries an issue of fact without a jury "[a] party, on appeal, may challenge the sufficiency of the evidence to sustain any finding without having objected to it by motion or otherwise."

argument in support of the mother's position, but that is not the end of our inquiry. Instead, we must look to the mother's petition on appeal to determine whether she is making a sufficiency-of-the-evidence challenge or if she is raising other issues never presented to the juvenile court.

The mother argues on appeal that (1) "[t]he State did not show by clear and convincing evidence that [the child] could not be returned to [the mother's] custody" under section 232.116(1)(f)(4); (2) "[t]ermination of parental rights is not in the child's best interests" under section 232.116(2); and (3) the juvenile court "should not have terminated [the mother's] parental rights given the bond between [the child and the mother], the age of [the child], and the necessity of placing the child in a hospital, facility, or institution for care and treatment" under section 232.116(3). For the first two challenges, the mother is contesting the sufficiency of the evidence supporting the statutory grounds for termination and the best-interest question. Because the State carries the evidentiary burden on both those issues, the mother may contest on appeal whether sufficient evidence supports each finding. *See A.R.*, 316 N.W.2d at 888–89; *see also In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021) ("The State must prove termination was proper by clear and convincing evidence.").

The outcome is different for the third issue—whether the child's age, a close bond, or possible facility placement warrant an exception to termination under section 232.116(3). On that claim, the mother's passive approach has consequences because any exception was hers to prove. *See W.T.*, 967 N.W.2d at 322 ("'[T]he parent resisting termination bears the burden to establish an exception to termination' identified in section 232.116(3)." (citation omitted)).

During the hearing, the mother's attorney neither addressed these statutory exceptions nor offered evidence to support them. Accordingly, we find this issue waived.

### II. Merits.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f). We review termination proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Throughout our review, we give weight to the juvenile court's factfinding and credibility determinations. *Id.*

First considering the statutory ground for termination, we only consider whether sufficient evidence supports the fourth element of paragraph "f"—that the child could not have been returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(1)–(4).[3] In September 2022, the child was adjudicated in need of assistance and removed from her mother's custody after the mother used methamphetamine in the home and the child was exposed to frequent domestic violence. During the roughly eighteen months between removal and the April 2024 termination hearing, the mother continued using methamphetamine and never followed through with recommended substance-use treatment. Two weeks before the hearing, the mother reported she could only maintain sobriety for two or three days at a time. Beyond her substance use, the mother skipped nearly every family-services session offered by the department, which would have assisted her towards the goal of reunification with her child.

---

[3] Because the mother only disputes the fourth element of section 232.116(1)(f), we do not discuss the first three elements. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

Having made little to no progress towards that goal, we conclude sufficient evidence supports the juvenile court's finding that the child could not be safely returned to the mother's custody at the time of the hearing.[4]  *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

Moving to the second step, the State met its burden to show termination is in the child's best interests.  *See* Iowa Code § 232.116(2).  Since the child was removed, she has been shuffled in and out of foster care—six placements in eighteen months.  Her most stable placement has been with an aunt and uncle in Minnesota, where she feels safe and loved.  The child also has some mental-health needs, brought on by significant episodes of trauma throughout her life.  She is best supported by having a caregiver who can ensure her safety and provide for her mental and emotional needs.  *See id.*  The mother has not shown she is capable of providing such support for her child.  Moreover, we agree with the juvenile court that "a termination order would be a more permanent resolution than a guardianship" for this child.  *See A.S.*, 906 N.W.2d at 477 ("[A] guardianship is not a legally preferable alternative to termination." (citation omitted)).

---

[4] The father's parental rights were also terminated, and he did not appeal. However, the mother offers additional arguments against terminating the father's parental rights in this appeal.  Because the mother does "not have standing to assert" arguments on behalf of the father, we do not consider those arguments.  *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007).

Because the child deserves permanency in a household that will meet her needs and support her, the State proved the child's best interests are served by terminating the mother's parental rights.

**AFFIRMED.**

All judges concur except Buller, J. partially dissents.

**BULLER, Judge (concurring in part and dissenting in part).**

I concur in the judgment, but I think the majority goes further than it needs to with dicta addressing the "tension" in our unpublished decisions. I agree that, under existing case law and rules, a parent's attorney can preserve error on the sufficiency of the evidence by cross-examining witnesses and arguing against termination at hearing or in writing. And I agree error was not preserved at all in this case on the permissive exceptions. But I part ways with the majority's "second" purported clarification, which chips away at our error-preservation rules to hold a parent need not argue below that "the State failed to meet its burden of proof" to raise sufficiency of the evidence on appeal. This holding is unnecessary to disposition of the case, and I think it is wrong. I therefore concur in part and dissent in part.

As a preliminary concern, we should not decide unnecessary issues, particularly when they are not adequately litigated with adversarial briefing. The mother's petition on appeal did not acknowledge the waiver issue at all, and the State cited three of our unpublished decisions supporting waiver in response. Instead of the mother developing an argument, the majority has picked up the mantle of partisan advocacy on behalf of this and future appellants. Yet, as the majority alludes, there are competing interests on both sides of this issue. I would not wade into it without more detailed briefing from the Attorney General and parents' attorneys. Because the parent's attorney in this case meaningfully contested the statutory elements of termination, I would find error preserved and not go further.

I dissent specifically from the majority's first full paragraph on page four, in which the majority broadly states a rule that lacks sound legal footing. I disagree that we do not require error preservation for the statutory elements of termination. As many of our unpublished cases—authored or joined by fourteen of our current and former judges—recognize, a parent who fails to attend trial or meaningfully contest termination through counsel waives an appellate challenge to the sufficiency of the evidence. *See, e.g.*, *In re J.R.*, No. 24-0676, 2024 WL 4223394, at *1 (Iowa Ct. App. Sept. 18, 2024); *In re E.W.*, No. 22-0604, 2022 WL 2824733, at *1 (Iowa Ct. App. July 20, 2022); *In re M.F.*, No. 18-0289, 2018 WL 3057772, at *1 (Iowa Ct. App. June 20, 2018); *In re M.L.H.*, No 16-1216, 2016 WL 4803999, at *1 (Iowa Ct. App. Sept. 14, 2016); *In re K.W.*, No. 15-0790, 2015 WL 4642786, at *1 (Iowa Ct. App. Aug. 5, 2015); *In re D.W.*, No. 14-0545, 2014 WL 2600358, at *1 (Iowa Ct. App. June 11, 2014); *In re C.T.*, No. 14-0243, 2014 WL 1714958, at *1 (Iowa Ct. App. Apr. 30, 2014); *In re P.S.*, No. 11-0516, 2011 WL 2714169, at *1 (Iowa Ct. App. July 13, 2011); *see also In re K.K.*, No. 16-0151, 2016 WL 1129330, at *1 (Iowa Ct. App. Mar. 23, 2016) (finding that counsel offering an exhibit, even when a parent failed to attend trial, preserved error because the parent "presented at least a modicum of evidence"). The majority points to two bases for its contrary conclusion on preserving a sufficiency challenge: an old supreme court case and a new one.

First, the majority looks to *In re A.R.*, 316 N.W.2d 887, 888–89 (Iowa 1982), a supreme court decision from forty years ago rarely cited on this issue (but often cited on the necessity of filing post-trial motions to preserve error). Tellingly, no party to this case cited *A.R.* to us. And it is at odds with a maxim we have repeated

hundreds of times: "As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal." *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994). And we seem to have only recently discovered the error-preservation portion of *A.R.* ourselves, seeing that it went unaddressed in so many of our unpublished decisions going back more than a decade. This suggests, at minimum, some question as to *A.R.*'s utility and for which steps of our termination-proceeding review it would apply. And perhaps it is time for the supreme court to revisit the question, in light of our unpublished decisions repeatedly holding otherwise. Or maybe *A.R.* should be reconsidered on a more fundamental level, as it is at least facially incompatible with the notion that our appellate courts are only empowered to correct legal errors and, "[i]f an issue was never presented to the district court to rule on, and if the district court did not in fact rule on it, we lack any 'error' to correct." *State v. Gomez Medina*, 7 N.W.3d 350, 355 (Iowa 2024); *see* Iowa Const. art. V, § 4; Iowa Code §§ 602.4102, .5103 (2024). In any event, I think the intervening years have highlighted the very concern the supreme court hinted at in a footnote in *A.R.*, which is that it is fundamentally unfair and contrary to judicial economy to fault trial courts who are "given no indication" of a "problem" before appeal, only to be surprised with a reversal that could have been corrected. 316 N.W.2d at 889 n.3. While I can understand why the majority felt it must address *A.R.* after stumbling upon it, I would not find *A.R.* controls here as broadly as the majority suggests.

Second, the majority relies on a more recent divided supreme court decision: *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). There, the supreme court overruled decades of precedent to obviate the requirement a

criminal defendant must preserve error on a sufficiency challenge. *See id.* Like the chief justice and two other dissenters, I believe *Crawford* is a wrongly decided departure from existing law. *See id.* at 203–11 (Waterman, J., dissenting in part, joined by Christensen, C.J., and Mansfield, J.). And many of the same criticisms levied by the dissent in *Crawford*—that the majority was deciding an issue "without the benefit of adversarial briefing" and that the departure from recent case law suggested the majority thought it knew better than its predecessors—have parallels here. *See id.* at 203. Perhaps most importantly, deciding sufficiency-of-the-evidence questions without the benefit of adversarial testing and a full record violates "basic error preservation 101." *Id.* at 206. While the *Crawford* majority opinion binds me in criminal cases under our hierarchical court structure, I oppose expanding its precarious holding to disavow our existing unpublished decisions, as the majority does here. In doing so, the majority accelerates our journey down the slippery slope of undermining error-preservation rules that serve "a fundamental principle of law with roots that extend to the basic constitutional function of appellate courts." *State v. Harrington*, 893 N.W.2d 36, 42 (Iowa 2017).

Last, we should recognize the majority is making express what has otherwise been implied—that a parent may voluntarily avoid personal appearance in termination proceedings without waiving their challenge. This may warrant legislative scrutiny. The majority's conclusion relies on case law that holds a parent need not be personally present to satisfy due process; but that case law does not address the present situation of a parent who fails to attend trial absent good cause. *See In re M.D.*, 921 N.W.2d 229, 233–37 (Iowa 2018) (recognizing parents' due-process right to participate in hearings can be satisfied by telephone

or similar means short of in-person attendance).  Other states, by statute and case law, have established that a parent who willfully fails to attend a termination trial essentially defaults or waives their ability to challenge termination.[5]  There are legitimate public policy questions for and against such a rule, and it warrants discussion by the elected branches.  A statute addressing this issue expressly would be preferable to this flux in our case law.

---

[5] *See, e.g.*, Fla. R. Juv. P. 8.510(a)(3) ("If a parent served with notice fails to appear at the advisory hearing, the court must enter a consent to the termination of parental rights petition for the parent who failed to appear."); Kan. Stat. Ann. § 38-2248(f) (2024) ("In evidentiary hearings for termination of parental rights under this code, the case may proceed by proffer as to parties not present, unless they appear by counsel and have instructed counsel to object."); Okla. Stat. tit. 10A, § 1-4-905(A)(5) (2024) ("The failure of a parent who has been served with notice under this section to personally appear at the hearing shall constitute consent to the termination of parental rights by the parent given notice."); Or. Rev. Stat. § 419B.819(7)(a) (2024) ("If a parent fails to appear for any hearing related to the petition, or fails to file a written answer, as directed by summons or court order . . . the court, without further notice and in the parent's absence, may: . . . [t]erminate the parent's rights . . . ."); *see also In re Malachi S.*, 150 N.Y.S.3d 435, 437 (App. Div. 2021) (requiring "a reasonable excuse for the default and a meritorious defense" to vacate a default judgment due to absence in a termination proceeding); *In re Doe Child.*, 360 P.3d 1067, 1073 (Idaho Ct. App. 2015) (addressing default judgment in termination proceedings); *Christy A. v. Ariz. Dep't of Econ. Sec.*, 173 P.3d 463, 469 (Ariz. Ct. App. 2007) (considering a default judgment following a parent's failure to appear at trial); *In re David John D.*, 831 N.Y.S.2d 536, 537 (App. Div. 2007) ("The father's failure to appear on the ultimate hearing date constituted a default."); *In re Guardianship of N.J.*, 775 A.2d 32, 34 (N.J. Super. Ct. App. Div. 2001) ("[T]he parent was well-aware of the possibility that failure to appear could result in entry of a default judgment terminating parental rights."); *In re Welfare of Child. of Coats*, 633 N.W.2d 505, 511–12 (Minn. 2001) (rejecting a challenge to a default judgment terminating rights when parent "failed to demonstrate that she had a reasonable defense on the merits or that she had a reasonable excuse for failing to appear").